THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PABLO MENDOZA, Defendant-Appellant.

First District (3rd Division) No. 1—03—2059

Opinion filed December 22, 2004.—Rehearing denied February 1, 2005.

Robert Brent Pennington, of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jon Walters, and Dennis Dwyer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

Following a bench trial, defendant, Pablo Mendoza, was convicted of reckless homicide, reckless homicide of an unborn child, and aggravated fleeing and attempting to elude a police officer. He was then sentenced to 24 years' imprisonment. On appeal, defendant contends that his conviction must be reversed because the trial court relied on a mandatory statutory presumption in effect at the time of trial that has since been held unconstitutional. He also contends that the trial court erred in allowing the emergency room doctor to testify that his name was incorrect on his medical chart and that he shrugged his shoulders on being told that two people died as a result of the automobile collision. We affirm.

At trial, Alsip police officer Jim Brongiel testified that about 4 a.m. on May 20, 2000, he was on patrol when he received a call of a suspicious vehicle on 120th Street in Alsip, Illinois. He proceeded to that location and saw a Chevrolet Suburban parked behind an apartment building. When Officer Brongiel illuminated the car with his spotlight, an Hispanic male stuck his head out of the passenger rear window and said something like "oh, shit, it's the police." The driver, later identified as defendant, then pulled away and Officer Brongiel activated his emergency lights and siren and gave chase. As defendant turned onto Hamlin Avenue, he accelerated his speed and then turned west onto 121st Place, driving at a speed of approximately 35 to 40 miles per hour. Defendant also made "somewhat wide" turns and was "swerving from left to right." When defendant got to the end of 121st Place, he turned south onto Harding and then turned east onto 122nd Street, making a wide turn and disobeying a stop sign. He then made another wide turn south onto Avers Avenue and, after that, turned and drove through a stop sign east onto 123rd Street.

Officer Brongiel testified that defendant accelerated as he drove on 123rd Street, and he did not recall seeing brake lights when defendant approached the cross streets along 123rd Street. As he approached Kedzie Avenue, Officer Brongiel saw another vehicle heading

north on Kedzie. He also saw that the light was red for eastbound traffic on 123rd Street and that defendant appeared to be pulling away from him. As he passed the traffic signal, defendant swerved slightly, then collided with the vehicle coming north on Kedzie.

After the collision, Officer Brongiel observed a woman lying on the street and defendant exiting his vehicle and walking toward the cemetery next to the road. Officer Brongiel drew his service weapon and ordered defendant to stop. Officer Brongiel took defendant into custody, and when he asked defendant if he realized what he had done, defendant shook his head and said "it didn't matter."

Officer Brongiel further testified that his dash-mounted radar and camera recorded the chase on videotape. Officer Brongiel later viewed the tape, which showed the chase starting on 122nd Street and Avers Avenue. The tape showed that defendant passed three speed limit signs, indicating a speed limit of 35 miles per hour, and that at one point in the chase, his squad car was traveling at 71 to 73 miles per hour. The tape also indicated that the traffic light was red as the officer approached the intersection at 123rd and Kedzie behind defendant, and that it was still red when defendant was in the middle of the intersection. In addition, the tape showed that the brake lights on defendant's vehicle went on momentarily at the time of the collision.

Giovanna DiRutigliano testified that she was with some friends on the morning of the incident, when one of her friends called for a ride. Two men in a Suburban picked them up and DiRutigliano identified defendant as the driver. She stated that she could smell marijuana upon entering the vehicle, but she did not see either of the men smoking this substance. After they dropped one of her friends off, they waited outside an apartment building. At this time, DiRutigliano switched seats and moved to the front of the vehicle.

Defendant was seated in the driver's seat when a police car pulled up. Defendant drove off and the police officer turned on his flashing lights and followed them with his emergency lights on. DiRutigliano recalled one of the men saying "get rid of the heat." She further testified that as they were driving with the police in pursuit, defendant was picking up speed. At one time, she looked at the speedometer, which indicated that they were traveling about 80 miles per hour. She told defendant to stop and let her out because she was scared.

When they were a couple of feet away from the intersection at 123rd and Kedzie, she saw that the traffic light was red and saw headlights coming from the right perpendicular street. She told defendant to stop and that they were going to crash, then felt the car pick up speed and travel through the intersection, colliding with the

approaching vehicle. DiRutigliano admitted on cross-examination that her statement to the police did not include the fact that she had smelled marijuana in the Suburban, that she saw the speedometer register 80, or that she observed the red light on the traffic signal.

Doctor Alicia Shirakbari testified to treating defendant at the St. Francis emergency room the morning of the incident. Defendant told her that he was the driver of the vehicle, that he was fleeing from the police because he did not have a driver's license, and that he hit another car. Doctor Shirakbari testified that defendant had a blood-alcohol level of .127 and that his toxicology screen was positive for marijuana and cocaine.

Doctor Shirakbari further testified that she told defendant that there were two fatalities. The prosecution then asked whether she saw defendant say or do anything in response. Defense counsel objected on the grounds of relevance, but the trial court overruled the objection. Doctor Shirakbari stated that defendant shrugged his shoulders and did not say anything. She also testified that defendant's initial medical record indicated that his name was "Nenbozh."

Alsip police sergeant Randy Kessler testified that he responded to the scene of the accident on 123rd Street and Kedzie Avenue. The sergeant looked inside the Suburban and saw a nickel-plated semiautomatic weapon inside the center console between the front seats.

Alsip police officer Mark Miller testified that he searched the Suburban after it was towed to the Alsip police station. He found and inventoried a handgun and a burnt marijuana cigarette.

Merrionette Park police officer John Cavazos testified that he responded to a call concerning the incident in question. When he was a few blocks away from the intersection of 123rd and Kedzie, he saw a Suburban collide with a smaller vehicle. Prior to and at the point of impact, he saw that the light was green for southbound traffic on Kedzie. He also saw two bodies project out of the smaller vehicle, then saw defendant exit the driver's side of the Suburban and climb over a fence by the cemetery. Officer Brongiel stopped defendant at gunpoint and asked him why he was running; defendant replied that he did not have a license.

Officer Cavazos was standing at the rear door of the ambulance while defendant was being treated on the scene and heard defendant tell the paramedics that his name was Pablo Babosa. Officer Brongiel followed the ambulance to the hospital, where he heard defendant correct his name for hospital personnel. The officer was also present during defendant's initial treatment at the hospital and heard him state to his female doctor and the nursing staff that he was driving the

vehicle and was involved in an accident because he was running from the police. On cross-examination, the officer admitted that he did not include defendant's statements in his handwritten report.

At the conclusion of the State's case, the parties entered numerous stipulations, including a life and death stipulation regarding the victims, Michelle Burton and Sandra Macabee. The parties further stipulated that if Dr. Rexene Worrell were called, she would testify that she performed an autopsy on the body of Michelle Burton, that a male fetus was recovered from her uterus, that at the time of the collision the fetus was alive, and that it would be Dr. Worrell's expert opinion that Burton's death was caused by the multiple injuries she sustained when she was ejected from her automobile after being struck by another vehicle. Dr. Worrell would further testify that she performed an autopsy on the body of Sandra Macabee and that it would be her expert opinion that Macabee's death was caused by an automobile accident while she was a passenger in the automobile.

The trial court found defendant guilty of eight counts of reckless homicide, two counts of reckless homicide to an unborn child, and two counts of aggravated fleeing and attempting to elude the police. In rendering its judgment, the trial court summarized the evidence in the case, stating that "[w]hile turning corners, the defendant turned somewhat wide and was swerving from left to right," defendant disobeyed two stop signs, the "Suburban, travelling at an excessive rate of speed, entered the intersection against the red light just as another vehicle was entering the intersection," defendant said he was fleeing from the police, and defendant had a blood-alcohol concentration of .127 and his toxicology screen was positive for cocaine and marijuana. In considering the charges of first degree murder based on strong probability of death or great bodily harm and reckless homicide, the trial court noted that the difference between the two was not always easily discernible and that "these types of cases are very fact specific." The court then found that the facts in the case clearly showed that defendant acted recklessly prior to and at the time of the fatal collision.

Defense counsel filed a motion for a new trial, arguing, *inter alia*, that the testimony of Dr. Shirakbari was speculative and without foundation and generally insufficient to prove defendant guilty beyond a reasonable doubt. The trial court denied the motion. Defendant subsequently filed a *pro se* motion for reconsideration of his sentence, and the trial court reduced his sentence from 27 years' imprisonment to 24 years.

In this appeal, defendant first contends that his conviction must be reversed because the trial court applied the presumption contained

in section 9—3(b) of the Criminal Code of 1961 (720 ILCS 5/9—3(b) (West 2000)), which provided that being under the influence of alcohol or other drugs at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disputed by evidence to the contrary. Defendant notes that after the trial court rendered its decision in his case, the supreme court found this provision to be an unconstitutional mandatory presumption of recklessness. *People v. Pomykala*, 203 Ill. 2d 198, 209 (2003).

Defendant concedes that the prosecution did not rely on the section 9—3(b) presumption, mention it, or seek to apply it in any manner, and that the trial court also did not mention the presumption in announcing its finding of guilt. He contends, however, that since the presumption was in effect at the time the trial court entered its finding, we must presume that the court followed it. Defendant's argument is based on the long-standing principle that in a bench trial, the trial judge is presumed to know the law and to follow it.

In presenting his argument, defendant acknowledges *People v. Taylor*, 344 Ill. App. 3d 929, 937 (2003), where the court held that even though the retail theft statute at issue contained an unconstitutional mandatory presumption, the reviewing court could assume that the trial court was aware that the presumption was unconstitutional, and thus found defendant guilty without relying on the presumption, inferring the requisite intent from the surrounding circumstances. However, defendant attempts to distinguish *Taylor* from the case at hand because in *Taylor*, unlike here, three previous courts had found the presumption mandatory and thus unconstitutional. *Taylor*, 344 Ill. App. 3d at 937. We disagree.

■ Although the supreme court had not yet ruled on the reckless homicide statute when defendant's case was decided, the Third District Appellate Court had held the section 9—3(b) mandatory presumption to be unconstitutional. *People v. Pomykala*, 326 Ill. App. 3d 390, 394 (2001). In addition, the supreme court had determined that in criminal law, mandatory presumptions which shift the burden of production to defendant are unconstitutional. *People v. Watts*, 181 Ill. 2d 133, 147 (1998). Thus, as in *Taylor*, 344 Ill. App. 3d at 937, we may assume that the trial judge was aware that the presumption was mandatory and thus unconstitutional and that the court did not rely on it in finding defendant guilty of reckless homicide.

This assumption is supported by the record, which contains no indication that the trial court applied the section 9—3(b) presumption in determining defendant's guilt, and affirmatively demonstrates that the court based its ruling on the considerable evidence establishing the elements of the charged offense. The trial court made no mention

of the section 9—3(b) presumption, stated that the case was of a "fact specific" nature, and concluded that the facts of the case clearly showed that defendant acted recklessly prior to and at the time of the fatal collision. The court specifically identified the manner in which defendant was driving, that he was fleeing the police and driving at excessive speeds, that he entered the intersection against a red light, and that he was under the influence of alcohol and drugs. Accordingly, we reject defendant's contention and find no cause for reversal. *Taylor*, 344 Ill. App. 3d at 937.

In reaching this conclusion, we also find defendant's reliance on *Pomykala*, 203 Ill. 2d at 210, unpersuasive. *Pomykala* was tried before a jury that was specifically instructed on the section 9—3(b) presumption and both counts of reckless homicide against defendant alleged that he was under the influence of alcohol. *Pomykala*, 203 Ill. 2d at 210-11. This case, by contrast, was a bench trial where the prosecution did not rely on or argue the section 9—3(b) presumption, and the trial court's findings show that it did not apply the presumption but, rather, considered all the relevant facts in determining whether defendant acted recklessly. Additionally, six of the eight counts of reckless homicide against defendant in this case mention not only defendant's intoxication, but also the fact that he failed to stop at the red light.

■ Defendant next contends that his conviction must be reversed because of two alleged evidentiary errors that occurred at trial. Defendant argues that the trial court erred in allowing Dr. Shirakbari to testify that his name was incorrect on his medical chart because this testimony was inadmissible double hearsay. He also argues that it was error for the trial court to allow the doctor to testify that defendant shrugged his shoulders on being told that two people died as a result of the automobile collision because this testimony was irrelevant and violated the patient-physician privilege.

We note, initially, that these objections may be deemed waived. In order to preserve an issue for review, defendant must both offer an objection at trial and raise the matter with some specificity in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Williams*, 264 Ill. App. 3d 278, 285 (1993). Here, defendant did not object at trial to the doctor's testimony that his name was incorrect on his medical chart or raise any hearsay objection to the doctor's testimony in his posttrial motion. Although defendant objected at trial to the doctor's testimony regarding his response to the report of the fatalities in the crash on relevance grounds, neither relevance nor privilege was asserted as a basis of objection to the doctor's testimony in his posttrial motion. Accordingly, we find these objections waived. *Enoch*, 122 Ill. 2d at 186.

Defendant urges this court, nevertheless, to reach the merits of his claims under the plain error doctrine. The plain error doctrine is an exception to the waiver rule that may be invoked where the evidence at trial was closely balanced or where the claimed error is of such magnitude as to have deprived defendant of a fair trial. *Williams*, 264 Ill. App. 3d at 285. We find the plain error exception inapplicable to this case.

The record shows that the evidence was not closely balanced and that defendant's reckless conduct was clearly established by properly admitted evidence. The record also shows that the trial court made no reference to the testimony objected to on appeal, and there is no indication that the court relied on improper evidence in finding defendant guilty.

Moreover, even if we were to find that the evidence was improperly admitted, these errors were not of such magnitude as to deprive defendant of a fair trial. *Williams*, 264 Ill. App. 3d at 285. The record shows there was other evidence that defendant provided a false name to law enforcement personnel and shrugged off the consequences of his actions. Officer Brongiel testified that when he asked defendant if he realized what he had done, defendant shook his head and said "it didn't matter." Further, Officer Cavazos heard defendant tell the paramedics that his name was Pablo Babosa. When viewed in light of this record, any prejudicial impact of the testimony objected to on appeal was insufficient to constitute reversible error. *Williams*, 264 Ill. App. 3d at 287.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

KARNEZIS, P.J., and HARTMAN, J., concur.