FOURTH DIVISION

November 10, 2005

No. 1-04-1405

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) No. 03CR10935

)

JUAN QUINONES, ) The Honorable

) Lawrence Terrell, 

Defendant-Appellant. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant Juan Quinones was found guilty of two counts of defacing firearm identification marks and two counts of aggravated unlawful use of a weapon (UUW).  Defendant was sentenced to four years in prison for each count of defacing a firearm and to three years in prison for each count of aggravated UUW, to be served concurrently, and was ordered to submit a blood specimen for genetic testing.  On appeal, defendant contends (1) that section 24-5(b) of the Criminal Code of 1961 (720 ILCS 5/24-5(b) (West 2002)) contained an unconstitutional mandatory presumption that relieved the State of its burden of proving that a defendant knowingly or intentionally defaced the identifying marks on a firearm beyond a reasonable doubt; (2) that his multiple convictions of defacing a firearm and multiple convictions of aggravated UUW violate the one-act, one-crime doctrine; (3) that the trial court’s mistaken belief that aggravated UUW was a Class 3, rather than a Class 4, felony influenced its sentencing decision; (4) that he was prejudiced when the trial court failed to completely admonish him of his appellate rights; and (5) that 
the compulsory extraction of his DNA was a violation of his constitutional rights
. 

At trial, Federal Bureau of Investigations Special Agent Ralph Anthony Renno testified that on April 11, 2003, he received a phone call from Maria Garza.  Garza told Renno that earlier that morning she had received a note on her door that read “we have David [Villarreal]” and instructed Garza to call a certain phone number.  Garza had also received calls concerning the kidnaping from a different phone number.  Renno sought and was granted permission to tap and trace both phone numbers.  At 7 p.m., Garza met Renno at the FBI office.  From 7 p.m. until 2 a.m., Garza engaged in six discussions with a person at the number written on the note.  At 2 a.m., Garza and the party on the phone agreed to talk again in the morning.  From 9 a.m. on April 12, 2003, until the afternoon, Garza engaged in several more conversations with the party at the number written on the note.  The parties agreed to meet at Garza’s sister-in-law’s house at 1944 South 55th 
Court in Cicero, Illinois, where Garza would give the other party a certain amount of money in exchange for Villarreal’s release.  

Several FBI agents, a Chicago police officer and Garza proceeded to 1944 South 55th
 Court. Several agents and Garza entered the house while Renno, Special Agent Brian Murphy, Special Agent Dennis Timothy and FBI employee Susana Herrera, who would act as an interpreter, remained in a van across the street from the residence to conduct surveillance.  While Garza and the agents were in the residence, several calls were placed between Garza and a man named Antonio, further negotiating the exchange.  At trial, Renno testified that the voice of the man on the recordings of these conversations was defendant’s.  He further testified that, when apprehended, defendant identified himself as Antonio. 

At 6:06 p.m., a Chevrolet Astro van pulled up to the house at 1944 South 55th
 Court.  The driver got out of the van and approached the house while the passenger, who Renno identified as defendant, remained in the van.  The driver knocked on the front door of the house
 but Garza and the agents inside did not answer.  The driver walked back to the car, got in and exchanged words with defendant.  Defendant then picked up a cellular phone and held it to his ear.  Thereafter, the driver again went to the front door of the house
 and knocked.  The agents stationed in the house opened the door and arrested the driver.  Defendant then got out of the van, put his head down and began briskly walking away.  Renno and the officers in the surveillance van apprehended defendant.  Through Herrera, Renno asked defendant where Villarreal was being kept.  Defendant offered to lead the officers to the location.  On the way, in response to questions posed by Renno, defendant indicated that there were two people guarding Villarreal and that they had a gun.  

The agents arrived at a basement apartment at 207 West Quincy in Riverside, Illinois, the location where defendant had indicated Villarreal was being held, at 6:45 p.m.  The agents attempted to call the men inside the apartment but received no answer.  The agents went to the door of the apartment, knocked, received no answer and pried the door open.  When he entered the apartment and turned on the lights, Renno observed two men lying on the living room floor with a third man, who was bound with duct tape, lying between them.  In the kitchen, the agents recovered a Ruger handgun.  The serial number on the handgun had been filed off.  

Defendant was transported to a nearby police station.  Defendant had keys which he indicated were to the apartment at 207 West Quincy and a cellular phone in his possession.  The number of the cellular phone matched the number from which Garza had received calls on April 11 and 12.  When Renno interviewed defendant at the police station, defendant stated that he had also been a victim of the kidnaping.  According to defendant, earlier that week an acquaintance named Arqui had invited defendant and Villarreal to lunch.  The next morning, when they went to Arqui’s apartment, they were abducted.  Arqui told defendant that he had given Roglio Aguirre $80,000 to hold but that Aguirre had stolen the money.  Because defendant had known Aguirre for a long time, Arqui believed abducting defendant would help him find Aguirre.  Arqui had threatened to hurt defendant’s family in Mexico if he did not assist him.  Defendant admitted that he had placed the phone calls to Garza.  

Herrera’s testimony was consistent with Renno’s.  She testified that she had spoken Spanish all of her life and that she had translated the conversation between defendant and Renno after defendant was apprehended to the best of her ability.  In Herrera’s opinion, the voice on the recorded phone calls was defendant’s.  

FBI Special Agent Sean Burke was assigned to the kidnaping on April 11, 2003.  His testimony regarding the events leading up to the agents’ arrival at 1944 South 55th
 Court was also consistent with Renno’s.  Burke, other agents and Garza entered the residence at 1944 South 55th
 Court through the back door so that they would not be seen if the house were being watched.  At about 6 p.m., Burke received a radio transmission from Renno indicating that a van containing two men had stopped in front of the house.  When the driver knocked on the door of the residence, Burke intructed the other agents and Garza not to answer.  Immediately thereafter, Garza received a phone call.  The caller indicated that someone had been sent to the door of the location where they were to meet but that no one had answered.  The driver again approached the door and knocked at which point he was arrested.  After securing the driver, Burke saw that Renno and the other agents had defendant in custody down the street.  Burke also proceeded to 207 West Quincy and entered the apartment with Renno.   His account of what was found in the apartment was consistent with Renno’s. 

Brian Wilson, an Illinois State Police forensic scientist specializing in firearm and tool marks, identified a Ruger P 89 DC semiautomatic handgun as that recovered from the apartment at 207 West Quincy.  Wilson testified that the gun was in operating condition and that it fired as intended.  Wilson testified that the serial number on the gun had been obliterated but conceded that he could not say when the obliteration occurred or who had caused the number to be obliterated.  

The parties stipulated that a proper chain of custody of all physical evidence had been maintained, that defendant’s fingerprints were not found on the gun but that those of one of the men found in the apartment were, and that defendant did not have a firearm owner’s identification (FOID) card.

At the close of the State’s case-in-chief, defendant’s motion for a directed finding was denied.  Defendant rested and the trial court found defendant guilty of two counts of defacing a firearm and two counts of aggravated UUW, noting that defendant had constructive possession of the gun.  Defendant’s motion for a new trial was denied and the trial court sentenced defendant to concurrent terms of four years for each defacing a firearm count and three years for each aggravated UUW count. 

On appeal, defendant first contends that section 24-5(b) of the Criminal Code of 1961 (the Code) (720 ILCS 5/24-5(b) (West 2002))
(footnote: 1) was unconstitutional because it contained a mandatory presumption that relieved the State of its burden of proving that a defendant knowingly or intentionally defaced the identifying marks on a firearm beyond a reasonable doubt. 

Section 24-5 of the Code provided:

“(a) Any person who shall knowingly or intentionally change, alter, remove or obliterate the name of the maker, model, manufacturer’s number or other mark of identification of any firearm commits a Class 2 felony,

(b) Possession of any firearm upon which any such mark shall have been changed, altered, removed or obliterated shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.”  720 ILCS 5/24-5 (West 2002). 

We review the constitutionality of a statute 
de novo
.  
People v. Malchow
, 193 Ill. 2d 413, 418 (2000).  While a statute carries a strong presumption of constitutionality and we have a duty to interpret a statute in a manner that upholds its constitutionality if it can be reasonably done (
People v. Maness
, 191 Ill. 2d 478, 483 (2000); 
People v. Fisher
, 184 Ill. 2d 441, 448 (1998)), “we are also mindful of the well-established principle that penal statutes are to be construed strictly in favor of the defendant” (
People v. Pomykala
, 203 Ill. 2d 198, 209 (2003), citing 
People v. Whitney
, 188 Ill. 2d 91, 98 (1999)).  

The State is constitutionally required to prove every element of a crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 316, 61 L. Ed. 2d 560, 571, 99 S. Ct. 2781, 2787 (1979).  Nonetheless, the State may rely on certain presumptions or inferences to prove its case.  
Pomykala
, 203 Ill. 2d at 203.  Presumptions are legal devices that permit or require a fact finder to assume that a fact exists, after predicate or basic facts have been established.  
People v. Watts
, 181 Ill. 2d 133, 141 (1998).  Presumptions “play a vital role in the expeditious resolution of factual questions, with the value of the presumption or inference resting on the strength of the connection between the elemental or ultimate fact presumed or inferred and the basic or evidentiary fact.”  
People v. Hester
, 131 Ill. 2d 91, 98 (1989). 

Permissive presumptions allow, but do not require, a finder of fact to infer the existence of an ultimate fact upon proof of a predicate fact while mandatory presumptions require a fact finder to accept a presumption.  
Watts
, 181 Ill. 2d at 142.  Mandatory presumptions are either conclusive or rebuttable.  
Pomykala
, 203 Ill. 2d at 203.  

“The United States Supreme Court has held that mandatory conclusive presumptions are unconstitutional, as they conflict with the presumption of innocence. [Citation.] The Supreme Court has further held that mandatory rebuttable presumptions that shift the burden of persuasion to the defendant are 
per se
 unconstitutional, because they relieve the State of its burden to prove each element of the offense beyond a reasonable doubt. [Citation.] In 
Watts
, this court held that mandatory rebuttable presumptions that shift the burden of production to the defendant are also unconstitutional. [Citation.] Thus, under Illinois law, all mandatory presumptions are now considered to be 
per se
 unconstitutional.”  
Pomykala
, 203 Ill. 2d at 203-04. 

Defendant argues that the Illinois Supreme Court’s decision in 
Pomykala
 supports his contention that section 24-5(b) creates an unconstitutional mandatory presumption.  In 
Pomykala
, the defendant was convicted of reckless homicide when his car hit a vehicle while he was driving under the influence of alcohol.  The trial court instructed the jury in accordance with the language of 9-3(b) of the Code (720 ILCS 5/9-3(b) (West 2000)), which provided:

“ ‘In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary.’ ” 
Pomykala
, 203 Ill. 2d at 202, quoting 720 ILCS 5/9-3(b) (West 2000). 

The supreme court recognized that the previous version of the statute had provided: 

“ ‘In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be prima facie evidence of a reckless act.’ ” 
Pomykala
, 203 Ill. 2d at 204, quoting Ill. Rev. Stat. 1991, ch. 38, par. 9-3(b).  

The court noted that, in amending the statute, the legislature had simply omitted the term “
prima facie
” and had inserted in its place the definition of 
prima facie
.  The court found that section 9-3(b) of the Code contained an unconstitutional mandatory presumption because the definition of 
prima facie
 necessitated “a finding of recklessness without any factual connection between the intoxication and the reckless act, unless this presumed connection is disproved.”  
Pomykala
, 203 Ill. 2d at 208.

After 
Pomykala
 was decided, in 
People v. Miles
, 344 Ill. App. 3d 315 (2003), the appellate court examined a similar statute to the statute challenged here.   In 
Miles
, the defendant was convicted pursuant to section 16 of the Illinois Credit Card and Debit Card Act (the Act) (720 ILCS 250/16 (West 2002)).  On appeal, she contended that the second sentence of section 16 of the Act contained an unconstitutional mandatory presumption.  Section 16 provided, in relevant part:

“ ‘The possession by a person other than the purported issuer of 2 or more credit cards or debit cards which have been counterfeited is prima facie evidence that the person intended to defraud or that he knew the credit cards or debit cards to have been so counterfeited.’ ” 
Miles
, 344 Ill. App. 3d at 317, quoting 720 ILCS 250/16 (West 2002).

The appellate court held that “[c]onsistent with the 
Pomykala
 analysis, if a statute incorporating the definition of ‘
prima facie
’ to establish an element of a criminal offense creates a prohibited mandatory presumption, then a statute that uses the object of the definition, that is, ‘
prima facie
,’ to establish an element is similarly prohibitive.”  
Miles
, 344 Ill. App. 3d 319-20.  Accordingly, the court found that section 16 of the Act created an unconstitutional mandatory presumption.

Here, defendant argues that, as in 
Miles
, because section 24-5(b) of the Code provided that evidence that a defendant possessed
 a defaced firearm was 
prima facie
 evidence that the defendant knew or intended that the firearm be defaced, it created a mandatory presumption and was therefore unconstitutional.  

The State does not address 
Pomykala
, arguing simply that 
Miles
 was wrongly decided because its holding contradicts the rule that “
prima facie 
language used in statutes only creates a 
permissive
 inference.”  (Emphasis in original.)  In support of its argument, the State cites 
People v. Robinson
, 167 Ill. 2d 53, 75 (1995), in which the Illinois Supreme Court stated:

“In the criminal context, 
prima facie
 evidence is in the nature of a presumption, more accurately described as an instructed interference. [Citation.] 
Prima facie
 evidence may be defined as a quantum of evidence sufficient to satisfy the burden of production concerning a basic fact that allows an inference of a presumed fact. [Citation.] Where the burden of production is satisfied, the trier of fact is permitted but not required to find the presumed fact. [Citation.] 

Even where the State satisfies the burden of production concerning a basic fact, a defendant bears no actual burden to produce evidence to prevent operation of the inference. ***

***

Once the burden of production is satisfied, the judge is permitted but not required to find the burden of persuasion satisfied depending on the judge’s consideration of all the evidence.” 

As defendant points out, 
Pomykala
 overruled this court’s decision in 
People v. Peshak
, 333 Ill. App. 3d 1052 (2002).  In 
Peshak
, the defendant contended on appeal that section 9-3(b) of the Code contained an unconstitutional mandatory presumption.  The appellate court noted that section 9-3(b) had been amended to replace the term “
prima facie
” with the term’s definition.  The court relied on 
Robinson
 in finding that the amended language of section 9-3(b) of the Code created a permissive, rather than a mandatory, presumption, stating that “[o]ur supreme court in 
Robinson
 makes clear that even if the State satisfies its burden of producing ‘
prima facie
 evidence,’ the trier of fact may reject the presumed fact, even where the defendant has failed to produce any evidence.”  
Peshak
, 333 Ill. App. 3d at 1063. 

We agree with defendant that, inasmuch as 
Robinson
 stands for the proposition that statutory language that incorporates the term “
prima facie
” to establish an element of a criminal offense creates a permissive presumption, it has been implicitly overruled by 
Pomykala
.  We further find that this case is similar to 
Pomykala
 and 
Miles
.  Under the statute scrutinized here, a 
prima facie
 case that a defendant knowingly and intentionally defaced a firearm was established upon the State’s showing that a defendant possessed a defaced firearm.  When the State rested, therefore, the burden shifted to defendant to show that he had not knowingly or intentionally defaced the firearm.  “The placement of such an evidentiary burden on a defendant is always unconstitutional” (
Miles
, 344 Ill. App. 3d at 320, citing 
Watts
, 181 Ill. 2d at 147), and effectively relieves the State of its burden of proving an essential element of the offense beyond a reasonable doubt (see 
Miles
, 344 Ill. App. 3d at 320).    Accordingly, giving the language of the statute its plain and ordinary meaning (
People v. Jordan
, 354 Ill. App. 3d 294, 299-300 (2004)), we find that section 24-5(b) of the Code created an impermissible mandatory rebuttable presumption and was therefore unconstitutional.  

The State further argues that, even if section 24-5(b) contained an unconstitutional mandatory presumption, defendant’s convictions of defacing a firearm need not be reversed because the record is devoid of any showing that the trial court relied on the presumption.
 

In 
People v. Taylor
, 344 Ill. App. 3d 929, 936-37 (2003)
, the defendant was convicted pursuant to a retail theft statute that the First, Second and Fourth District Appellate Courts had held to contain an unconstitutional mandatory presumption.  On appeal, the court rejected the defendant’s contention that his conviction should be reversed, noting that the court was presumed to know that the provision had been held unconstitutional and that the record revealed that the trial court had not referenced the provision in entering judgment against the defendant.  The court found that “we may assume that the trial judge found the defendant guilty of retail theft without relying on the constitutionally infirm presumption but, rather, inferred the requisite intent from the surrounding circumstances.” 
Taylor
, 344 Ill. App. 3d at 937.  

In 
People v. Mendoza
, 354 Ill. App. 3d 621 (2004), after the defendant was convicted of several counts of reckless homicide, the supreme court determined, in 
Pomykala
, that section 9-3(b) of the Code created an unconstitutional mandatory presumption.  On appeal, the defendant contended that because the trial court had applied the unconstitutional provision, his convictions should be reversed.  In rejecting the defendant’s contention, the trial court noted that at the time of his conviction, the Third District Appellate Court had found the provision unconstitutional and the supreme court had held that mandatory presumptions were unconstitutional.  The appellate court held that “we may assume that the trial judge was aware that the presumption was mandatory and thus unconstitutional and that the court did not rely on it in finding defendant guilty of reckless homicide.”  
Mendoza
, 354 Ill. App. 3d at 626.  Further supporting its holding, the court noted that the record contained “no indication that the trial court applied the section 9-3(b) presumption in determining defendant’s guilt, and affirmatively demonstrat[ed] that the court based its ruling on the considerable evidence establishing the elements of the charged offense.”  
Mendoza
, 354 Ill. App. 3d at 626. 

We find this case distinguishable from 
Taylor
 and 
Mendoza
.  Here,
 at the time of defendant’s conviction, other courts of appeal had not held that section 24-5(b) of the Code created an unconstitutional mandatory presumption.  Additionally, unlike in the cited cases, in this case, though the trial court did not indicate that it relied on the presumption in convicting defendant, the fact that defendant “knowingly or intentionally change[d], alter[ed], remove[d] or obliterate[d] the name of the maker, model, manufacturer’s number or other mark of identification of [the] firearm” (720 ILCS 5/24-5(a) (West 2002)) was established only by the State’s evidence showing that defendant possessed a defaced firearm.  Accordingly, we find that defendant’s due process rights were violated by the application of section 24-5(b) of the Code and reverse his conviction of two counts of defacing a firearm.  

Defendant next contends that his convictions of two counts of defacing a firearm and of two counts of aggravated UUW are in contravention of the one-act, one-crime doctrine and therefore, this court should vacate one of each of the convictions.  The State notes that, because he failed to object at trial and to raise the issue in a posttrial motion, defendant has waived this contention.  See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  Defendant asks that we consider his contention, nonetheless, pursuant to the plain error doctrine.  

The plain error rule may be invoked when "(1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnitude that the accused is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process."  
People v. Johnson
, 208 Ill. 2d 53, 64 (2003); 
People v. Herron
, 215 Ill. 2d 167, 186-87 (2005).  We review defendant’s contention for plain error because “ ‘the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule.’ ” 
People v. Carter
, 213 Ill. 2d 295, 299 (2004), quoting 
People v. Harvey
, 211 Ill. 2d 368, 389 (2004).  

As discussed above, we have determined that defendant’s convictions of defacing a firearm should be vacated on other grounds.  Accordingly, here, we need only address defendant’s contention that his multiple aggravated UUW convictions contravene the one-act, one-crime doctrine. 

The aggravated UUW statute provides: 

“(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; 

***

*** and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or 

***

C) the person possessing the firearm has not been issued a currently valid Firearm Owner’s Identification Card[.]”  720 ILCS 5/24-1.6 (West 2002). 

In this case, the State charged, pursuant to the language of subsections 24-1.6(a)(3)(A) and (C), that defendant:

“Knowingly carried on or about [his] person, a firearm, to wit: Ruger P89DC semi-automatic handgun[,] at a time when [he was] not on [his] own land or in [his] own abode or fixed place of business and the firearm was uncased, loaded and immediately accessible at the time of the offense, *** and

Knowingly carried on or about [his] person, a firearm, to wit: Ruger P89DC semi-automatic handgun[,] at a time when [he was] not on [his] own land or in [his] own abode or fixed place of business and the person possessing the firearm had not been issued a currently valid firearm’s [
sic
] owner’s identification card.”

Defendant was convicted of both counts of aggravated UUW. 

The one-act, one-crime doctrine prohibits multiple convictions when they are carved from the same physical act or where one of the offenses is a lesser included offense of the other.  
People v. Lindsey
, 324 Ill. App. 3d 193, 200 (2001).  The supreme court has defined an “act” as  “ ‘any overt or outward manifestation which will support a different offense.’ ” 
People v. Rodriguez
, 169 Ill. 2d 183, 188 (1996), quoting 
People v. King
, 66 Ill. 2d 551, 566 (1977). 

The appellate court addressed a similar contention to defendant’s in 
People v. Carter
, 344 Ill. App. 3d 663 (2003), 
aff’d in part & rev’d in part on other grounds
, 
People v. Carter
, 213 Ill. 2d 295 (2004).  In 
Carter
, the defendant was convicted of several counts of unlawful possession of a weapon by a felon and one count of possession of a firearm without a valid FOID card.  On appeal, the defendant contended, 
inter alia
, and the State conceded, that his conviction of possession of a firearm without a FOID card, in conjunction with his conviction of unlawful possession of a firearm contravened the one-act, one-crime doctrine.  The appellate court agreed, finding “[t]he defendant’s offense of unlawful possession of a weapon by a felon was based on the same conduct as his offense of possession of a firearm without a FOID card.  Particularly, both offenses were based on the defendant possessing a .22-caliber handgun.”  
Carter
, 344 Ill. App. 3d at 672. 

Here, too, defendant’s aggravated UUW convictions, one based on his possession of an uncased, loaded, accessible firearm, and the other based on his possession of the weapon without a valid FOID card, were each based on the same act, specifically, defendant’s possession of the firearm.  Accordingly, we find that the two convictions cannot stand under the one-act, one-crime doctrine and reverse one of the convictions. 

Defendant next contends that his sentence should be vacated and that his case should be remanded for resentencing because, in sentencing defendant, the trial court mistakenly believed that aggravated UUW was a Class 3 felony, which carried a minimum sentence of two years and a maximum sentence of five years (730 ILCS 5/5-8-1(a)(6) (West 2002)), when it was, in fact, a Class 4 felony, which carried a minimum sentence of one year and a maximum sentence of three years (730 ILCS 5/5-8-1(a)(7) (West 2002)).  We agree with the State that defendant has waived this issue because he failed to object at trial and to raise the issue in a posttrial motion.  See 
Enoch
, 122 Ill. 2d at 186.  However, we will grant defendant’s request that we review his contention under the plain error rule because “[a] claim that the trial court misunderstood the minimum and maximum sentences for the offense falls within the second prong of the plain error rule.”  
People v. Wilkins
, 343 Ill. App. 3d 147, 149 (2003), citing 
People v. Hausman
, 287 Ill. App. 3d 1069, 1071-72 (1997).  

“According to 
People v. Eddington
, 77 Ill. 2d 41, 48 *** (1979), ‘[a] misstatement of the understanding of the minimum sentence by the trial judge necessitates a new sentencing hearing only when it appears that the mistaken belief of the judge 
arguably
 influenced the sentencing decision.’ (Emphasis added.)” 
Hausman
, 287 Ill. App. 3d at 1072.  “In considering whether a mistaken belief influenced the trial court’s sentencing decision, courts look to whether the trial court’s comments show that the court relied on the mistaken belief or used the mistaken belief as a reference point in fashioning the sentence.”  
People v. Hill
, 294 Ill. App. 3d 962, 970 (1998). 

In support of his contention, defendant analogizes the facts of this case to 
Hausman
.  In 
Hausman
, during sentencing, the trial court stated that, because of certain mitigating factors, it would sentence the defendant to the minimum sentence of three years.  However, the minimum sentence for the defendant’s offense was actually two years.  On appeal, the court vacated the defendant’s sentence and remanded for a new sentencing hearing, holding that, though the trial court was entitled to impose a three-year sentence, its comments during sentencing indicated that its mistaken belief that the minimum sentence was three years “arguably influenced the judge’s sentencing decision.” 
Hausman
, 287 Ill. App. 3d at 1072.  

We agree with the State that 
Hausman
 is distinguishable from the case at bar.  Instead, the facts of this case are more similar to the facts of 
Wilkins
.  In 
Wilkins
, the defendant’s indictment and presentencing report indicated that the offense of which the defendant was convicted was nonprobationable.  During sentencing, the trial court commented that the offense was nonprobationable and sentenced the defendant to 10 years in prison.  However, the offense was probationable.  On appeal, the court rejected the defendant’s contention that the trial court’s misunderstanding of the law arguably influenced its sentencing decision.  The court found 
Hausman
 distinguishable because, “based on the court’s comments at the sentencing hearing and the ultimate sentence imposed, the court clearly had no intention of sentencing defendant to the minimum sentence.” 
Wilkins
, 343 Ill. App. 3d at 150. 

In this case, during defendant’s sentencing hearing, the State noted that defendant had been convicted of two counts of aggravated UUW and that the offense of aggravated UUW is a Class 4 felony that may be punished by between one and three years in prison.  After indicating that it had considered the parties’ arguments in aggravation and mitigation, the trial court stated, “[o]n [aggravated UUW] Counts 3 and 4 which are Class 3 felonies, your sentence is three years Illinois Department of Corrections.”  The mittimus, which was thereafter signed by the trial court, also indicated that aggravated UUW was a Class 4 felony.  Here, as in 
Wilkins
, the trial court did not indicate that it wished to sentence defendant to the minimum or maximum sentence available.  The three-year sentence was not the minimum nor the maximum prescribed for a Class 3 felony and was, in fact, within the range prescribed for a Class 4 felony.  Moreover, the record indicates that the court was notified that aggravated UUW was a Class 4 felony both by the State and the mittimus.  In sum, there is simply no indication on the record that the trial court “relied on the mistaken belief or used the mistaken belief as a reference point in fashioning the sentence.”  
Hill
, 294 Ill. App. 3d at 970.  Accordingly, the trial court’s misstatement, that aggravated UUW was a Class 3 felony, did not arguably influence its sentencing decision and we refuse to vacate defendant’s sentence on this ground. 

Next, defendant contends that, because he was prejudiced by inadequate Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001) admonishments during his sentencing hearing, his case should be remanded to the trial court with instructions that it completely admonish defendant.  

Rule 605(a) requires that, at the time of sentencing, a court admonish a defendant who has been found guilty following a trial that in order to preserve his right to appeal, he must file notice of appeal within 30 days of his sentence, that if the defendant wishes to challenge his sentence prior to taking appeal, he must file a motion to reconsider his sentence within 30 days, that any sentencing issue not raised in the motion to reconsider will be waived on appeal and that in order to preserve his right to appeal the defendant must file a notice of appeal within 30 days of the disposition of his motion to reconsider.  Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001.

Our supreme court recently addressed the issue of incomplete Rule 605(a) admonishments in 
People v. Henderson
, No. 98887 (August 18, 2005).   The court held that “where a defendant is given incomplete Rule 605(a) admonishments regarding the preservation of sentencing issues for appeal, remand is required only where there has been prejudice or a denial of real justice as a result of the inadequate admonishment.”  
Henderson
, slip op. at 13.   The court further held that, as in the case before it, “where no sentencing issues were raised on appeal, defendant [is] neither prejudiced nor denied real justice.”  
Henderson
, slip op. at 17.   However, the court noted:

“If defendant 
had
 presented actual sentencing challenges in his appeal, the appellate court would at least have been alerted to the existence of these issues.  The court then could have taken whatever actions it deemed appropriate, including hearing the challenges itself or remanding them to the trial court.”  (Emphasis in original.)  
Henderson
, slip op. at 15. 

In this case, the court admonished defendant:

“You have the right to file an appeal, but first you must file a motion within thirty days of today’s date.  If you cannot afford a lawyer to assist you, you will, however, be given a free lawyer and free copies of transcripts necessary for those purposes.”

Thereafter, defendant filed a motion to reconsider his sentence but did not raise the contention, raised here and discussed above, that the trial court based his sentence for aggravated UUW on its mistaken belief that the offense was a Class 3 felony.  Defendant’s motion for reconsideration was denied.

Because the court did not admonish defendant of the necessity of filing a motion to reconsider his sentence in order to preserve sentencing issues on appeal, we agree with defendant that it failed to strictly adhere to Rule 605(a).  Defendant concedes that incomplete admonishments alone do not warrant remand.  However, he argues that
 because he has raised a waived sentencing issue on appeal, he has demonstrated that he was prejudiced by the trial court’s incomplete admonishments and remand is necessary. 

We acknowledge that defendant has raised a waived sentencing issue on appeal; however, remand is not warranted in this case.  As a result of defendant’s raising the issue before this court, we are charged with taking “whatever actions [we] deem[] appropriate, including hearing the challenge[] [ourselves] or remanding [it] to the trial court.”  
Henderson
, slip op. at 15.  Significantly, defendant specifically requests that we review the alleged sentencing error ourselves pursuant to the plain error doctrine.  In the interest of judicial economy, we have complied with defendant’s request and have found that the alleged error does not warrant vacation of defendant’s sentence and remand for a new sentencing hearing.  Defendant has not alerted us to other waived sentencing errors.  Accordingly, it is not necessary to remand defendant’s case so that he may be completely admonished pursuant to Rule 605(a).

Finally, defendant contends that the compulsory extraction of his blood and the perpetual storing of his DNA profile, pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2002)), violates his constitutional right to be free from unreasonable searches and 
seizures.  Defendant asserts that pursuant to the "special needs" test, section 5-4-3 is nothing more than an attempt to aid law enforcement and therefore is unconstitutional in light of the "individualized suspicion" requirement for fourth amendment purposes.  In the alternative, defendant asserts that if we employ the "balancing test" the outcome still favors him. 

Pursuant to section 5-4-3, any person convicted or found guilty of any felony offense under Illinois law on or after August 22, 2002, must submit a blood, saliva, or tissue specimen to the Illinois Department of State Police for DNA analysis.  730 ILCS 5/5-4-3(a) (West 2002).  This court has repeatedly rejected constitutional challenges to section 5-4-3.  See 
People v. Redmond
, 357 Ill. App. 3d 256 (2005); 
People v. Foster
, 354 Ill. App. 3d 564 (2004); 
People v. Butler
, 354 Ill. App. 3d 57 (2004); 
People v. Edwards
, 353 Ill. App. 3d 475 (2004); 
People v. Ramos
, 353 Ill. App. 3d 133 (2004); 
People v. Smythe
, 352 Ill. App. 3d 1056 (2004), 
appeal denied
, 213 Ill. 2d 573 (2005); 
People v. Peppers
, 352 Ill. App. 3d 1002 (2004); 
People v. Hall
, 352 Ill. App. 3d 537 (2004); accord 
People v. Garvin
, 349 Ill. App. 3d 845 (2004) (Second District), 
appeal allowed
, 212 Ill. 2d 541 (2004)
.  
We continue to adhere to the holding that section 5-4-3 is constitutional and similarly reject defendant's arguments.

For the foregoing reasons, we reverse both of defendant’s convictions of defacing a firearm and one of defendant’s convictions of aggravated UUW and affirm the other of defendant’s convictions of aggravated UUW and the sentence associated with that conviction. 

Affirmed in part; reversed in part. 

QUINN, P.J., and CAMPBELL, J., concur. 

 

FOOTNOTES
1: Section 24-5(b) has since been amended to provide: “A person who possesses any firearm upon which any such importer’s or manufacturer’s serial number has been changed, altered, removed or obliterated commits a Class 3 felony.”  720 ILCS 5/24-5(b) (West 2004).