THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DINU CAZACU, Defendant-Appellant.

First District (4th Division)    No. 1—06—0376

Opinion filed May 10, 2007.

Isuf Kola & Associates, Ltd., of Bloomingdale (Isuf Kola, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Samuel Shim, and Brian O. Lee, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Following a bench trial, defendant was convicted on two counts of possession of an altered card pursuant to section 15 of the Illinois Credit Card and Debit Card Act (Act) (720 ILCS 250/15 (West 2004)) and sentenced to one year of probation. On appeal, defendant contends that (1) the trial court erred in admitting business records into evidence despite the lack of proper foundation for them, (2) the trial court erred in denying his motion for a directed verdict, (3) the charging instrument lacked the necessary certainty, and (4) section 15 of the Act contains an unconstitutional mandatory presumption.

## BACKGROUND

The record shows that defendant was charged by information with one count of possession of a counterfeit card. On December 14, 2005, the day of trial, the trial court granted the State's request for leave to amend or to file a second count of possession of "a stolen credit card."

During the ensuing bench trial, Jerri Hill testified that about 12:15 p.m. on February 17, 2005, she was working register 11 at the Home Depot located at 2301 Oakton in Evanston, Illinois, when defendant, whom she identified in court, attempted to purchase two combo packs of DeWalt drills, which were each $499. The parties stipulated that the total purchase price was $1,085.33.

Hill testified that she requested defendant's state identification (ID) due to the amount of the purchase. Defendant also gave her a credit card, which he removed from his wallet. After Hill checked defendant's ID, she scanned the credit card into her computer. The number for the credit card account that appeared on the computer screen, however, did not match the number on the actual credit card. Hill then informed defendant that she needed to get approval for the purchase and called Home Depot security. Thereafter, a security guard responded and escorted defendant and the merchandise to the back of the store.

In court, Hill identified People's exhibit No. 1 as the credit card used by defendant. The card was a Citi Bank MasterCard that displayed defendant's name and the number 54241805555642245. She identified People's exhibit No. 2 as the sales receipt, which had her ID number. The receipt also displayed the last four numbers of the credit

card account as 6999, which was consistent with the account number she saw on her computer screen and different from the actual card number.

David Axelson, a manager of fraud investigation for Citi Bank, testified as an expert in the field of credit card fraud. He stated that on the afternoon of February 17, 2005, he went to the Evanston police department in response to a telephone call from Officer Ralph Mieszala. At the station, Mieszala provided Axelson with two credit cards, a debit card, and two private label store credit cards. The two nonprivate credit cards and debit card were MasterCards. Axelson physically inspected each card and determined that all five cards were original, true-issuance credit cards.

Axelson then examined the magnetic strip on each card with a magnetic strip reader, which he had used to inspect about 4,000 cards. He verified that the strip reader was functioning properly by first sliding his own credit card through the machine.

After the defense stipulated that the five cards in the State's possession were taken from defendant, Axelson verified that they were the cards he tested on February 17, 2005. Over defendant's objection, Axelson testified that the first credit card had been reencoded with another MasterCard account, which happened to be a Citi Bank credit account. When Axelson slid the credit card through the strip reader, an account number different from the number on the actual card appeared. Over defendant's objection that Axelson was not a keeper of Citi Bank records, Axelson stated that upon reviewing Citi Bank records, he discovered that the account number was issued to Albert Cowan.

Axelson then identified the debit card recovered from defendant. He stated that the card displayed defendant's name and the number 5262262028237426. Over defendant's objection, he further stated that he ran the card through the strip reader and discovered that a different MasterCard account was encoded in the strip. Like the first account, it was also a Citi Bank account.

Subsequently, when the State asked Axelson to whom the account number found in the card strip was assigned, the defense again objected. The following exchange then occurred:

"[DEFENSE COUNSEL]: The argument is he doesn't have knowledge. That they have to provide the keeper of record to include that information belongs to. They have not presented that evidence at this point, nor do we have that evidence at this point. It is improper for this witness to testify that through that information on that belongs to.

THE COURT: Have you provided them?

[ASSISTANT STATE'S ATTORNEY]: Your Honor, absolutely. There has been much discovery, and it's been an issue ongoing with counsel. Counsel has asked for certain discovery, and it all has been provided—many City [sic] Bank records, many police reports that contained the information, and the name and the account number of the account holder.

[DEFENSE COUNSEL]: Your Honor, I am not saying that they have not provided that information. What it is is we do not have the keeper of record. That is the only person who can testify to what information is contained in their account.

This person cannot testify that they are required on the foundation rules to bring the keeper of records to testify. This card belongs to this person or this number belongs to this person. It is improper to introduce that. It is clearly hearsay. It doesn't follow [sic] under the exception.

THE COURT: All right. I will sustain it and commence and continue this after the testimony of Mr. Axelson. They can bring in the keeper of records.

[DEFENSE COUNSEL]: Your Honor, we are in the midst—

THE COURT: I understand.

[DEFENSE COUNSEL]: I specifically asked in a motion that they disclose all their witnesses. I specifically asked about the keeper of record, and they said there was none. Now to come in and to allow them to bring in the keeper of record in the mist [sic] of trial is clearly improper and prejudicial to my client.

[ASSISTANT STATE'S ATTORNEY]: Your Honor, I believe if counsel—the witness had been declared an expert. If he relies—any report that he relies on in forming his opinion are admissible, he can testify about. That is clear under the rules.

THE COURT: I have forgotten as to that ruling, and I will allow him that. I will reconsider and allow him to answer. Go ahead."

Thereafter, Axelson testified that the debit card account belonged to Fran Evans. When defense counsel again objected to the testimony as hearsay, the trial court responded, "Overruled. I will allow to give us [sic] the information that led to his opinion." Axelson then reviewed the Citi Bank MasterCard records to refresh his recollection and stated that the account number for Albert Cowan was 5124180168706999,[1] and that the account number for Fran Evans was 5466160132704568. Axelson affirmed that he relied on Citi Bank MasterCard records on a

---

[1]We note that this number as listed in the trial transcript differs by one number from the account number provided by the parties' stipulation to Cowan's testimony and the police report's notation of Cowan's account number, 5424180168706999.

regular basis when forming his opinion as to account information and to whom such information belonged.

Over another defense objection as to foundation, Axelson testified that it was his opinion that the credit and debit cards he examined had been reencoded with information that did not belong to defendant. He based his opinion on the numbers disclosed by the magnetic strip reader, Citi Bank records, and his 20 years of experience as a fraud investigator.

Axelson identified defendant in court and testified that he was present when Detective Dobrowolski read defendant his rights at about 6:45 p.m. on February 17, 2005. Axelson stated that defendant confirmed he understood his rights. Defendant then told Detective Dobrowolski that he had lost his wallet a week prior to his arrest but that it was returned to him several days later. Defendant asserted that his cash was gone, but that the wallet contained his credit card.

Following Axelson's testimony, the parties stipulated that if called to testify, Fran Evans would state that she had never met defendant and had not given him permission to use her credit card. She would further testify that on February 17, 2005, she was the actual account holder of Citi Bank MasterCard with the account number 5466160132704568.

The parties also stipulated that if called to testify, Albert Cowan would state that he did not know defendant and had not given him permission to use his MasterCard account. He would further state that on February 17, 2005, he had a MasterCard with the account number 5424180168706999.

Furthermore, the parties stipulated that if called to testify, Officer Ralph Mieszala would identify defendant in court as the person he observed in a loss prevention center upon responding to a call at the Evanston Home Depot on February 17, 2005. He would also testify that he received a wallet containing defendant's driver's license and four credit cards, two of which were MasterCards and two of which were merchant cards. He would identify the two MasterCards in court as People's exhibits Nos. 1 and 4, and would identify People's exhibit No. 2 as the sales receipt for defendant's attempted purchase that he received from Home Depot.

Finally, the parties stipulated that if called to testify, Detective Dobrowolski would testify that he interviewed defendant on February 17, 2005, at the Evanston police station with Citi Bank fraud investigator David Axelson. Detective Dobrowolski read defendant his *Miranda* rights, and defendant waived those rights. Defendant gave a signed statement identical to the statement Axelson testified that defendant gave.

After the State rested, defendant filed a motion for directed verdict, which the trial court denied. Defendant then testified that he did not alter the credit and debit cards as alleged. On cross-examination, defendant admitted that the Citi Bank cards bearing his name, which were recovered from his wallet, belonged to him.

Following closing arguments, the court found defendant guilty as to each count of possession of an altered card and sentenced defendant to one year of felony probation. Defendant now appeals.

## ANALYSIS

On appeal, defendant first contends that the trial court erred in admitting business records without proper foundation where it allowed Axelson to testify as to the names on card accounts found in Citi Bank records. Defendant argues that the State should have called the keeper of the credit records to establish the foundation.

In making his argument, defendant relies on *People v. Clark*, 108 Ill. App. 3d 1071 (1982), in which this court reversed the defendant's convictions of three counts of knowing possession of a stolen vehicle where it determined that the trial court erroneously allowed a witness to testify as to business documents. Therein, the trial court had ruled that the State failed to lay a proper foundation for Budget Rental Car lease agreements, which allegedly established that Budget legally possessed the vehicles found in the defendant's possession. *Clark*, 108 Ill. App. 3d at 1081. Despite that ruling, the trial court permitted a Budget security manager, who did not have personal knowledge as to the process by which the content of those records was obtained, to testify as to those lease agreements. This court held that although the trial court properly excluded the lease agreements, it erred in allowing the witness to testify as to their content. *Clark*, 108 Ill. App. 3d at 1081. As such, this court reversed the defendant's conviction where it determined that without the witness's testimony as to the lease agreements, the State could not establish that the defendant knowingly possessed stolen vehicles. *Clark*, 108 Ill. App. 3d at 1082.

The State counters that Axelson properly testified as to the Citi Bank records since he relied on them in forming his expert opinion as to whether the cards were altered. A review of the record shows that although the trial court initially sustained defendant's objection, it permitted Axelson's testimony as to the Citi Bank records when the State informed the court that Axelson was an expert witness who could testify as to records on which he relied in forming his expert opinion.

■ Having reviewed the entire record, we find that the Citi Bank records were business records which were arguably admissible under

the hearsay exception pursuant to section 115—5 of the Illinois Code of Criminal Procedure of 1963 (725 ILCS 5/115—5 (West 2004)). See *United States v. Peden*, 556 F.2d 278, 281 (5th Cir. 1977) (credit card receipts maintained by issuing company were admissible under Rule 803(6) of the Federal Rules of Evidence). That said, the record shows that the State failed to lay a proper foundation for the Citi Bank records where Axelson did not testify as to his personal knowledge of the records or whether they were kept in the regular course of business. Nonetheless, we find no reversible error.

Axelson's testimony as to Citi Bank records disclosed the names of Fran Evans and Albert Cowan as the true card holders for account numbers 5466160132704568 and 5424180168706999, respectively. Although defendant objected to that testimony as hearsay, he later stipulated to Evans's and Cowan's testimony, which provided the exact same information. We, therefore, find that even if the trial court erred in permitting Axelson's testimony as to the names from the Citi Bank records, defendant's stipulation to Evans's and Cowan's testimony forfeited the issue for our review. See *People v. Watkins*, 368 Ill. App. 3d 927, 930-31 (2006) (the defendant's stipulation to the admissibility of prior statements without prior qualification forfeited review of the admission of those statements under section 115—10.1 of the Illinois Code of Criminal Procedure (725 ILCS 5/115—10.1 (West 2004)).

Moreover, we find any error that resulted was harmless. Section 15 of the Act provides in pertinent part:

"A person who, with intent to defraud either a purported issuer, or a person providing money, goods, property, services or anything else of value, or any other person, alters a credit card or debit card or a purported credit card or debit card, or possesses a credit card or debit card or a purported credit card or debit card with knowledge that the same has been altered, is guilty of a Class 4 felony." 720 ILCS 250/15 (West 2004).

Here, prior to his testimony as to the Citi Bank records, Axelson testified as to his use of a magnetic strip reader, which revealed that the account numbers contained on the card strips did not match the account numbers on the front of the credit and debit cards. These numbers, which were not hearsay, confirmed Hill's testimony that the credit card number on the face of defendant's card did not match the account number that appeared on her computer screen when she scanned the card. Thus, unlike *Clark*, upon which defendant relies, we find that even without the evidence as to Evans's and Cowan's names on the card accounts, a reasonable trier of fact could have found defendant guilty of possession of an altered card pursuant to section 15 of the Act (720 ILCS 250/15 (West 2004)).

■ Defendant next contends that the trial court erroneously denied his motion for directed verdict. We initially note that this was a bench trial, and thus defendant's motion is more properly classified as a motion for a directed finding of not guilty. Further, defendant's brief erroneously cites section 2—1110 of the Illinois Code of Civil Procedure (735 ILCS 5/2—1110 (West 2004)) as the standard for granting a directed finding. In a criminal case, however, section 115—4(k) of the Illinois Code of Criminal Procedure provides the proper standard:

> "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." 725 ILCS 5/115—4(k) (West 2004).

" 'A motion for a directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty. The [motion] requires the trial court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond [a] reasonable doubt, considering the evidence most strongly in the People's favor.' " *People v. Kelley*, 338 Ill. App. 3d 273, 277 (2003), quoting *People v. Withers*, 87 Ill. 2d 224, 230 (1981). "In moving for a directed verdict, the defendant admits the truth of the facts stated in the State's evidence for purposes of the motion." *Kelley*, 338 Ill. App. 3d at 277. This same standard applies to a motion for directed finding of not guilty in a bench trial. *People v. Connolly*, 322 Ill. App. 3d 905, 913-17 (2001). Since a motion for directed finding of not guilty presents a question of law, we review the trial court's ruling *de novo*. *Connolly*, 322 Ill. App. 3d at 918.

It is well settled that if a defendant chooses to present evidence following the denial of his motion for a directed finding at the close of the State's evidence, he waives any error resulting from the trial court's ruling on the motion unless he renews his motion at the close of all evidence. *Kelley*, 338 Ill. App. 3d at 277, citing *People v. DeBartolo*, 242 Ill. App. 3d 811, 816 (1993) (court found issue of trial court's ruling denying defendant's motion for directed finding waived where defendant did not renew motion after presenting evidence). Here, the record clearly shows that defendant did not renew his motion for directed finding at the close of evidence and thus waived any error resulting from the trial court's ruling.

Even if defendant had preserved this issue for review, we find it would fail. The charging instrument alleged that defendant committed the offense of possession of a "counterfeit card" in violation of section 15 of the Act. In support of that charge, the State presented the

testimony of Hill, who testified that defendant attempted to purchase two drills, each priced at $499, with a credit card. Upon scanning the credit card, however, Hill noticed that the account number on her computer screen did not match the account number on the card. Officer Mieszala then testified that he recovered four additional cards from defendant's wallet. Finally, Axelson, a credit card fraud expert, testified that he analyzed the credit cards recovered from defendant and determined that the cards, including two Citi Bank MasterCards, had been reencoded with information that did not belong to defendant. Based on this evidence, we find no error with the trial court's decision to deny defendant's motion at the close of the State's evidence.

■ In reaching that conclusion, we also deny defendant's argument that the charging instrument was void because it did not clearly inform him of the charged offense. We first note that defendant attacks the charging instrument for the first time on appeal. As such, the standard of review is much more liberal than if defendant had attacked the charging instrument in a pretrial motion. *People v. DiLorenzo*, 169 Ill. 2d 318, 321-22 (1996). In such a case, a charging instrument is sufficient where it apprises the accused of the precise information charged with enough specificity to allow preparation of a defense and to allow pleading a resulting conviction as a bar to future prosecution arising from the same conduct. *DiLorenzo*, 169 Ill. 2d at 322.

Defendant bases his entire argument on the wording found in the charging instrument. He claims that the disjunctive language therein failed to clearly inform him as to whether he was charged with possession or alteration of a card. The record belies this claim.

In the case at bar, the charging instrument explicitly alleged, "[Defendant] committed the offense of possession of counterfeit card." Although, as defendant asserts, the document went on to quote the statutory language of section 15 verbatim, which provides that a defendant violates it by either altering or possessing a card with knowledge that it is stolen, we find that the explicit opening language of the information clearly informed defendant that he was charged with possession, not alteration, of a card. In addition, when the State sought to add count II, which the trial court allowed, the assistant State's Attorney clearly stated that it sought to add another count charging defendant with possession of a card.

Moreover, the initial complaints filed by Officer Dobrowolski stated that defendant committed the offenses of possession of altered credit and debit cards. Those complaints also provided the specifics of the charges. Each alleged that defendant sought to defraud Citigroup, the purported issuer of the concerned MasterCard credit and debit cards.

The complaints stated that each card bore defendant's name. Further, it stated that the credit and debit cards had numbers, 5424180555642245 and 5262262028237426, respectively, which were altered to read 5424180168706999 and 5466160132704568, respectively.

In *People v. Heard*, 47 Ill. 2d 501 (1970), upon which defendant relies, the State's complaint charged the defendant with gambling. The complaint cited section 28—1(a)(8) of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 28—1(a)(8)) and set forth the disjunctive language of section 28—1(a)(8) which provided disparate ways the defendant could have committed gambling. Our supreme court determined that the disjunctive language caused confusion and conjecture as to "which of the alternatives the accused is charged with committing." *Heard*, 47 Ill. 2d at 505. As such, the court deemed the complaint void where it did not set forth the nature and elements of the charge with necessary certainty. *Heard*, 47 Ill. 2d at 505.

Conversely, in the case at bar, the State explicitly stated in the complaint, the charging instrument, and in court that it was charging defendant with possession of an altered or counterfeit card. Further, the complaint and charging instrument sufficiently set forth the elements of the charged offense. As such, contrary to defendant's assertion, there was no confusion as to whether he was charged with alteration of credit cards or possession of altered credit cards. We, therefore, find no error.

■ Finally, defendant contends that section 15 (720 ILCS 250/15 (West 2004)) is unconstitutional because it contains a mandatory presumption that erroneously shifts the burden of proof. The State concedes that the second sentence of section 15 constitutes an unconstitutional mandatory presumption. That sentence states:

> "The possession by a person other than the issuer of 2 or more credit cards or debit cards which have been altered is prima facie evidence that the person intended to defraud or that he knew the credit cards or debit cards to have been so altered." 720 ILCS 250/15 (West 2004).

We review the constitutionality of a statute *de novo*. *People v. Woodrum*, 223 Ill. 2d 286, 307 (2006). A statute is presumed constitutional, and the party challenging it has the burden of rebutting that presumption by clearly showing a constitutional violation. *Woodrum*, 223 Ill. 2d at 307-08. If reasonably possible, we must construe the statute to uphold its constitutionality. *Woodrum*, 223 Ill. 2d at 308.

"A presumption is a legal device that either permits or requires the trier of fact to assume the existence of an ultimate fact, after establishing certain predicate facts." *Woodrum*, 223 Ill. 2d at 308.

Although due process requires the State to prove each element of an offense beyond a reasonable doubt, the State may rely on certain presumptions or inferences to prove certain elements. *Woodrum*, 223 Ill. 2d at 308.

Presumptions may be permissive or mandatory. While a trier of fact is free to accept or reject a permissive presumption, a mandatory presumption requires the fact finder to accept the proffered presumption. *Woodrum*, 223 Ill. 2d at 308. Under Illinois law, all mandatory presumptions, which can be conclusive or rebuttable, are *per se* unconstitutional. *Woodrum*, 223 Ill. 2d at 309.

Here, defendant argues, and the State concedes, that section 15 contains a mandatory presumption. As such, the second sentence of section 15 is unconstitutional. That said, the State argues that the sentence is severable pursuant to section 1.31 of the Statute on Statutes (5 ILCS 70/1.31 (West 2004)), which provides:

> "If any provision of an Act enacted after the effective date of this amendatory Act or application thereof to any person or circumstance is held invalid, such invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid application or provision, and to this end the provisions of each Act enacted after the effective date of this amendatory Act are severable, unless otherwise provided by the Act."

In support of its argument, the State relies on *People v. Miles*, 344 Ill. App. 3d 315 (2003).

In *Miles*, the defendant argued that the second sentence of section 16 of the Act (720 ILCS 250/16 (West 2002)) was an unconstitutional mandatory presumption. Section 16 stated:

> "A person who, with intent to defraud either a purported issuer, or a person providing money, goods, property, services or anything else of value, or any other person, counterfeits a purported credit card or debit card or possesses a purported credit card or debit card with knowledge that the card has been counterfeited, is guilty of a Class 3 felony. The possession by a person other than the purported issuer of 2 or more credit cards or debit cards which have been counterfeited is prima facie evidence that the person intended to defraud or that he knew the credit cards or debits cards to have been so counterfeited." 720 ILCS 250/16 (West 2002).

Relying on *People v. Pomykala*, 203 Ill. 2d 198 (2003), the Second District held that the second sentence of section 16 "create[d] an unconstitutional mandatory presumption of intent to defraud." *Miles*, 344 Ill. App. 3d at 320. The court further determined, however, that the second sentence was severable pursuant to the Statute on Statutes (5 ILCS 70/1.31 (West 2002)) since the first sentence of section 16 set out all of the elements of the offense of possession of a counterfeit credit card and its penalty. *Miles*, 344 Ill. App. 3d at 320.

Here, the State argues that the second sentence of section 15, like the second sentence of section 16, can be severed from the remainder of the statute without impairing the meaning or operation of the statute. We agree.

The first sentence of section 15 clearly sets forth each of the elements of the offenses of the alteration of a credit or debit card or possession of an altered credit or debit card. In addition, the first sentence establishes the penalty of the offense as a Class 4 felony. As such, the severance of the second sentence of section 15 would not invalidate the statute. *Pomykala*, 203 Ill. 2d at 209-10; *Miles*, 344 Ill. App. 3d at 320.

■ Having reached that conclusion, we address the State's contention that the trial court did not rely on the unconstitutional presumption and, thus, that we may affirm defendant's convictions. In making that argument, the State relies on *People v. Taylor*, 344 Ill. App. 3d 929 (2003), and *People v. Mendoza*, 354 Ill. App. 3d 621 (2004).

In *Taylor*, following a bench trial the defendant was convicted of aggravated battery and retail theft. On appeal, the defendant argued that section 16A—4 (720 ILCS 5/16A—4 (West 2000)), which is part of Article 16A setting forth the criminal act of retail theft, contained an unconstitutional mandatory presumption. The court recognized that other courts had previously determined that a jury instruction incorporating section 16A—4 was unconstitutional since it contained a mandatory presumption. *Taylor*, 344 Ill. App. 3d at 935-36. As such, the court held that section 16A—4 was unconstitutional. *Taylor*, 344 Ill. App. 3d at 936. Nonetheless, the court noted that pursuant to section 16A—8 (720 ILCS 5/16A—8 (West 2000)), section 16A—4 was severable from the rest of the article governing retail theft.[2] *Taylor*, 344 Ill. App. 3d at 936. Furthermore, the reviewing court stated that since it presumed the trial judge to know the law, it assumed that the trial judge was aware section 16A—4 was unconstitutional. *Taylor*, 344 Ill. App. 3d at 937. Thus, it upheld the defendant's conviction where the record showed that neither the State nor the trial judge relied on section 16A—4 in making their respective argument and ruling. *Taylor*, 344 Ill. App. 3d at 937.

In *Mendoza*, following a bench trial, the defendant was convicted of reckless homicide, reckless homicide of an unborn child, and ag-

---

[2]We note that the language in *Taylor* asserted that section 16A—4 was severable from the rest of the "retail theft statute." However, 16A—4 was a separate section on presumptions, and thus was not part of section 16A—3, which set forth the elements of retail theft. Nonetheless, the court's analysis was correct as to the impact of 16A—4 on the defendant's conviction.

gravated fleeing and attempting to elude a police officer. On appeal, the defendant argued that his conviction should be reversed because the trial court relied on an unconstitutional mandatory presumption in section 9—3(b) of the Illinois Criminal Code (Code) (720 ILCs 5/9—3(b) (West 2000)). In making his argument, defendant noted that shortly after his conviction, our supreme court held in *Pomykala*, 203 Ill. 2d at 209, that section 9—3(b) created an unconstitutional mandatory presumption of recklessness. *Mendoza*, 354 Ill. App. 3d at 626. Although the trial court's ruling in *Mendoza* preceded the supreme court ruling in *Pomykala*, this court noted that the appellate court in *People v. Pomykala*, 326 Ill. App. 3d 390, 394 (2001), had held the section 9—3(b) mandatory presumption to be unconstitutional. *Mendoza*, 354 Ill. App. 3d at 626. This court also noted that the supreme court had held in *People v. Watts*, 181 Ill. 2d 133, 147 (1998), that in criminal law, mandatory presumptions were unconstitutional. *Mendoza*, 354 Ill. App. 3d at 626. As such, this court held that as in *Taylor*, it could assume that the trial judge was aware that the presumption was mandatory and unconstitutional, and did not rely on it in finding defendant guilty. *Mendoza*, 354 Ill. App. 3d at 626. Further, the court found that the record supported that presumption as the trial court made no mention of section 9—3(b), and thus affirmed defendant's conviction. *Mendoza*, 354 Ill. App. 3d at 927.

The State recognizes that no court has previously held the second sentence of section 15 unconstitutional. Nonetheless, the State argues that the trial court acknowledged it was aware of *Miles* and similar cases pertaining to statutes with the language "prima facie evidence." Consequently, the State argues that the trial judge did not rely on the unconstitutional presumption provision in finding defendant guilty.

As defendant asserts, this court recently addressed a near identical argument in *People v. Quinones*, 362 Ill. App. 3d 385 (2006). In *Quinones*, following a bench trial, the defendant was convicted of two counts of aggravated unlawful use of a firearm and two counts of defacing a firearm. On appeal, this court agreed with defendant's argument that section 24—5(b) of the Code (720 ILCS 5/24—5(b) (West 2002)) contained an unconstitutional mandatory presumption, which provided that a defendant's possession of a firearm indicated that the defendant knowingly or intentionally defaced the identifying marks on a firearm. *Quinones*, 362 Ill. App. 3d at 391. In so ruling, this court distinguished *Taylor* and *Mendoza*, where it held that although the trial court did not indicate that it relied on section 24—5(b), defendant's intent to deface the firearm was established only by his possession of the firearm. *Quinones*, 362 Ill. App. 3d at 395-96. Thus, this court reversed defendant's convictions of defacing a firearm

based on its finding that the application of section 24—5(b) violated his due process rights. *Quinones*, 362 Ill. App. 3d at 396.

Having reviewed the record, we find *Taylor* and *Mendoza* to be instructive. Although no court has held the presumption in section 15 to be unconstitutional, the record clearly shows that the trial court was aware of the ruling in *Miles*. Given the lack of the trial judge's reference to the presumption in section 15, we conclude that he likely relied on *Miles* and did not consider the second sentence in section 15 when finding defendant guilty. That said, we find, unlike *Quinones*, that the evidence in the case at bar established that defendant knowingly possessed altered credit and debit cards. The record shows that defendant gave one of the cards to sales clerk Jerri Hill in payment of a purchase of two drill sets,. and she determined that the number on the magnetic strip did not match the number on the card. Further, the police recovered other cards from the defendant's wallet bearing his name, and credit fraud expert Axelson discovered that the magnetic strips on those cards had been altered to contain account information that did not belong to defendant.

## CONCLUSION

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAMPBELL and MURPHY, JJ., concur.