2025 IL App (4th) 241445

NO. 4-24-1445

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Hancock County |
| LANCE R. GITTINGS, | ) | |
| Defendant-Appellant. | ) | No. 23CF93 |
| | ) | |
| | ) | Honorable |
| | ) | Rodney G. Clark, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices DeArmond and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant Lance R. Gittings appeals from his September 17, 2024, conviction for violating a February 9, 2022, order of protection, arguing that the trial court erred in denying his motion for directed verdict at the close of the State's evidence and that his trial counsel was ineffective for tendering certain jury instructions.

¶ 2       We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       Defendant's appeal stems from his September 17, 2024, conviction for aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)), resisting or obstructing a peace officer (*id.* § 31-1(a)), and violation of the February 9, 2022, order of protection (*id.* § 12-3.4(a)(1)(i)). This appeal relates only to defendant's conviction for violation of an order of protection.

¶ 5                                A. February 2022 Order of Protection

¶ 6            On February 9, 2022, an order of protection was entered in Hancock County case No. 22-OP-6, ordering defendant to "not abuse or threaten to abuse" Carolyn Neff, with whom defendant once had a relationship and who is the mother of defendant's child, D.G. Defendant was also ordered to "not have any contact with" Neff and to "stay away" from her "at all times." The order was to remain in force until February 8, 2024. It was marked with a stamp stating, "served in open court," and preprinted boxes on the order were checked indicating that defendant was "present in person in court" and that a copy of the order was given to defendant "in open court."

¶ 7                                B. The Underlying Incident

¶ 8            On November 23, 2023, Carolyn Neff was at her mother's residence in Hancock County for a Thanksgiving Day dinner with her family when she noticed defendant on the street outside of the residence looking in through the home's large picture window. Neff testified at trial that defendant "walk[ed] by, and I believe I said, 'There's Lance.' " She added, "And when I did, he pointed at me through the window and started yelling something." Neff said she was concerned because defendant "didn't need to be around me" due to the February 9, 2022, order of protection.

¶ 9            Neff said that a few seconds after she saw defendant, her seventeen-year-old son D.G. went "to the front door and him and his father *** were yelling at each other." She said that she remained inside. Neff added that the street was about 30 feet from her mother's residence.

¶ 10           D.G. confirmed his mother's testimony and testified at trial that he went outside because his father "was not supposed to be where he was" and because D.G. wanted to make sure that nothing happened. According to D.G., "This interaction with me, he's telling her to come here, keep talking to him and everything, and then I kept telling him no and told him to get—get out, get away from where he was—or away from us, and he kept walking."

- 2 -

¶ 11    The police were then called to the residence and subsequently arrested defendant.

¶ 12                    C. Charges Against Defendant

¶ 13    On November 27, 2023, defendant was charged by information with aggravated battery (count I) (*id.* § 12-3.05(d)(4)(i)), threatening a public official (Count II) (*id.* § 12-9), unlawful violation of an order of protection (count III) (*id.* § 12-3.4(a)(1)(i)), and resisting or obstructing a peace officer (count IV) (*id.* § 31-1(a)). Count III, the violation of an order of protection charge, asserted that defendant,

> "having been serviced with notice of the contents of a plenary order of protection on February 9, 2022, by the Circuit Court of Hancock County pursuant to the Illinois Domestic Violence Act, valid until February 8, 2024, did knowingly commit an act which was prohibited by the order of protection in that said defendant was physically present near and pointed and yelled at Carolyn Neff, a protected party."

¶ 14    Count III further asserted that defendant had been previously convicted of a violation of an order of protection on December 1, 2022, and May 18, 2023.

¶ 15                    D. Trial

¶ 16    The case proceeded to trial in September 2024. During the State's case-in-chief, Neff testified as follows:

> "Q.    I'm handing you what's previously been marked as People's Exhibit 4. Do you recognize or know what that is?
>
> A.    Yes.
>
> Q.    What do you recognize it to be?
>
> A.    This is the order that was granted in 2022.

Q.      What type of order is it?

A.      An Order of Protection.

Q.      And when was it granted?

A.      February 9th, 2022.

Q.      And on the date that was granted, was the Defendant present in court?

A.      Yes.

Q.      Was he served with this document?

A.      Yes."

¶ 17      At this point defendant objected, arguing a lack of foundation as to who served him with a copy of the order; the trial court sustained the objection. The State then continued examining the witness:

"Q.      Is there any indication on the document itself that the Defendant was served?

A.      Yes, somewhere, I think. Yes, copies given to Petitioner and Respondent in open court.

Q.      Thank you. And what page of the document is that?

A.      Ten."

¶ 18      No objection followed until the State tended the exhibit for admission into evidence.

"THE COURT: Any objection?

MR. THOR:   Just for the record, Your Honor, I'm still going to object as to who was the individual that served my client with that notice.

- 4 -

THE COURT: I'll sustain the objection. Do you have further evidence to put on with regard to the certification?

MS. JAMES: Not—I would note that on the last page of the document it does indicate that it was certified by the Circuit Clerk's Office.

(Brief pause.)

THE COURT: The Court has viewed the certification. I'm going to, over your objection, admit the document into evidence as a certified copy."

¶ 19 People's Exhibit 4 was then received into evidence.

¶ 20 1. *Motion for Directed Verdict*

¶ 21 Defendant orally moved for a directed verdict at the close of the State's evidence, arguing that the State had presented insufficient evidence that he had been served with the February 2022 order protection. According to defendant,

> "There hasn't been any testimony of who served my client with that particular Order of Protection. We don't have a chain as to who particularly served my client on that specific day and, furthermore, there hasn't been any evidence presented from the State's case in chief that my client had actual knowledge of the Order of Protection. There's no statements by my client saying that he knew about the Order of Protection; that he can't have contact with certain individuals."

¶ 22 The State argued that People's Exhibit 4 was presented as a certified copy, the order indicated it was served on defendant in open court, and it was stamped as "served in open court." The State further noted that Neff had testified that defendant was present in court when the order of protection was entered.

¶ 23 The trial court denied the motion, stating,

"[T]he Court is looking at its own order. It's very clear that it says 'served in open court.' Also it's very clear that it says 'copies given to Petitioner and Respondent in open court.' And then it's signed.

So I think that based on that evidence and that evidence alone, at least for the purpose of getting passed the Motion for Directed Finding, that is sufficient, so I'm going to deny your motion."

¶ 24 During his case-in-chief, defendant admitted he was under an order of protection issued in case No. 22-OP-6 that prohibited him from communicating with Neff and ordered him to stay away from her residence. Defendant said no distance was specified in the order of protection but that he was "not allowed to have direct or indirect [contact] with any third-party communication, e-mail, text message, *** hand signals, mouth communication, which would basically be nonvocal, no sign language or so forth." He was, however, allowed to have contact with D.G.

¶ 25 Defendant testified that he had gone for a walk on Thanksgiving Day 2023 and had taken a different walking route that day. According to defendant,

"I decided instead of going through the LaHarpe ballpark, just to stay on the roadway. And as every morning I usually take a left at the community center, I decided to go straight that day. As I cross the highway and I go straight I do notice Carolyn's vehicle, but I do know and I'm aware that is a nonsecure location. I'm on a public street."

¶ 26 The following exchange then occurred between defense counsel and defendant:

Q. So with your earbuds in your ears and you're walking around LaHarpe, let's talk about when you walked down the street and you saw Carolyn

Neff's car. You're open today saying that you did recognize Carolyn Neff's vehicle?

A. Well, of course.

Q. But you understand the confines of your Order of Protection?

A. Yes.

Q. So what did you do after that?

A. Well, the first thought was, is my son driving it or is she there? You know, I almost went up and knocked on the door because the previous relationship that I have with the family. I get along with them completely all the time. There's no disputes. There's no altercations. I always get along. So then my ultimate judgment was, no, just in case. Thanksgiving, you know. It was just one of those things. So as I walk back past the house, I'm walking and I glance over. I can see my son in the window wearing his white hat and so forth."

¶ 27 According to defendant, he was standing about 30 yards from the picture window. However, he could see his son in the window "clear as can be" and could also see "Neff was on his right side facing forward." At that point, he testified he made the comment,

" 'Hey, boy. Hey, boy. Hey, boy. Dad loves you.' Unfortunately I did use vulgar language. We do communicate together as father and son as basically saying FU, you know, just—just to speak to him and see him—just I needed that that day, and he just happened to be in the window."

¶ 28 Counsel asked, "So just to clarify, when you were pointing, 'Hey, boy. Hey, boy. Dad loves you,' that communication was directed to your son?" Defendant agreed, and then testified,

"So at that point in time, I start to walk. And the next thing you know, I hear my son come out the door, you know, 'You're supposed to be completely away from her. You know, you're stalking mom. I'm tired of it, you know. I'm tired of this drug problem.' Because that's what he stated. You're always in and out of rehab, you know, stuff like this. As, you know, and I'm like—and then Carolyn Neff comes barging out the door behind him stating that I'm supposed to be completely leaving her alone; she's tired of me stalking her; screaming and yelling at me at this point, you know. And I tell my son, you know, that you're an adult. We've had this conversation before. And as Carolyn Neff is yelling, I just blow it off and walk away, which is just blowing the situation off, not making direct comment, not saying nothing. That is when I turn and walk away and proceed to go on."

¶ 29 On cross-examination defendant was asked further about the February 9, 2022, order of protection and testified as to the following:

"Q. Mr. Gittings, you referenced 22-OP-6, correct?

A. Correct.

Q. That's the current OP with Carolyn Neff?

A. Correct.

Q. Okay. And in 22-OP-6 when it was issued, were you present in court at that time?

A. Yes, I was.

Q. And were you given a copy?

A. Yes, I was.

Q. Okay. And under the terms of that Order of Protection, it requires

that you stay away from Petitioner at all times. And you noted the line through on the footage, correct?

A.     Yes.

* * *

Q.     So, Mr. Gittings, you've been aware of this Order of Protection since it was entered on February 9th of 2022, correct?

A.     Yeah."

¶ 30     Defendant did not renew his motion for directed verdict at the close of all evidence.

¶ 31                    2. *Jury Instructions*

¶ 32     Defendant tendered two jury instructions relating to the alleged order of protection violation, which were based on Illinois Pattern Jury Instructions, Criminal, Nos. 11.77 and 11.78 (4th ed. 2000) (hereinafter IPI Criminal 4th), respectively. The instruction based on IPI Criminal 4th No. 11.77 read:

> "A person commits the offense of a violation of an order of protection when, having been served notice of the contents of an order of protection, or otherwise have acquired actual knowledge of the contents of the order, he commits an act which was prohibited by a court in an order of protection."

¶ 33     The instruction based on IPI Criminal 4th No. 11.78 reads:

> "To sustain the charge of violation of an order of protection, the State must prove the following propositions:
>
> First Proposition: That the defendant was physically present near and pointed and yelled at Carolyn Neff; and
>
> Second Proposition: That an order of protection prohibited the defendant

from performing those acts;

Third Proposition: That the order of protection was in effect at the time the defendant was physically present near and pointed and yelled at Carolyn Neff; and

Fourth Proposition: That at the time the defendant physically present near and pointed and yelled at Carolyn Neff, he had been served notice of the contents of an order of protection or otherwise had acquired actual knowledge of the contents of the order.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 34    Defendant's tendered instructions met with no objection and were given to the jury.

¶ 35    3. *Verdicts*

¶ 36    The jury returned a guilty verdict on counts I (aggravated battery), III (unlawful violation of an order of protection), and IV (resisting or obstructing a peace officer).

¶ 37    E. Motion for New Trial

¶ 38    Defendant filed a timely motion for new trial, arguing that the trial court erred in denying his oral motion for directed verdict on the unlawful violation of an order of protection at the close of the State's evidence. Defendant's motion argued "[t]here was no admissible evidence presented that the defendant had acquired actual knowledge of the contents of the plenary order of protection." The motion also argued that "[t]he sole evidence admitted into evidence by the State,

over defense counsel's objection, regarding the Defendant being served with notice of the contents of the plenary order of protection was a certified copy of the plenary order of protection [People's Exhibit 4]." According to the motion, "There was no evidence during the jury trial regarding who specifically served the notice of the contents of the plenary order of protection to the Defendant." Defendant continued, although defendant "received notice of the Petitioner's request for an order of protection *** notice of the Petitioner's request is not the same as receiving the notice of the contents of the granted plenary order of protection."

¶ 39       At the hearing, defendant's counsel stood on his written motion for new trial. In response, the State asked the trial court to take judicial notice of the February 9, 2022, order. The court denied defendant's motion, finding:

> "The Court is obviously familiar with what had taken place during the trial. The Order of Protection speaks for itself. It's—I think, the State is correct. It is a self-authenticating document. It took place in a separate case, and it indicates that he was in open court; he was served in open court, and I think that that's the requirements associated with the document. So I think the order speaks for itself. The fact that he was in open court, the fact that he was given it in open court, the Court signed the order stating that. I think that that meets the requirements of the Act and of the requirements of the law associated with the crime as charged."

Defendant was sentenced on November 7, 2024.

¶ 40       Defendant filed a timely notice of appeal on November 8, 2024, and an amended notice of appeal on November 21. The only issues raised here relate to his conviction for violation of an order of protection.

¶ 41       This appeal followed.

¶ 42                                    II. ANALYSIS

¶ 43        On appeal defendant raises two arguments: (1) the trial court erred in denying his motion for directed verdict at the close of the State's evidence on the charge of violating an order of protection and (2) his trial counsel provided ineffective assistance by tendering the two jury instructions based on IPI Criminal 4th Nos. 11.77 and 11.78 because they do not accurately reflect the law. The State contends that defendant has forfeited the first issue by failing to renew the motion for directed verdict at the close of all evidence. In response, defendant contends that his attorney was ineffective by failing to renew the motion.

¶ 44        We consider each in turn.

¶ 45                                    A. Directed Verdict

¶ 46        A motion for a directed finding asserts " 'only that as a matter of law the evidence is insufficient to support a finding *** of guilty.' " *People v. Reinking*, 2024 IL App (4th) 230486, ¶ 97 (quoting *People v. Withers*, 87 Ill. 2d 224, 230 (1981)); see 725 ILCS 5/115-4(k) (West 2022). " 'The making of it requires the trial court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond reasonable doubt, considering the evidence most strongly in the [State's] favor.' " *Reinking*, 2024 IL App (4th) 230486, ¶ 97 (quoting *Withers*, 87 Ill. 2d at 230). The issue of whether a directed finding should have been entered is a question of law, subject to *de novo* review. *Id.*; *People v. Cazacu*, 373 Ill. App. 3d 465, 473 (2007).

¶ 47        Defendant now concedes that the order of protection was properly admitted into evidence, but he argues that its admission should not have extended to the statements in the order that he had been served a copy of it.

¶ 48        In *Reinking*, we reiterated the well-settled principle that " 'if a defendant chooses to present evidence following the denial of his motion for a directed finding at the close of the

State's evidence, he waives any error resulting from the trial court's ruling on the motion unless he renews his motion at the close of all evidence.' " *Reinking*, 2024 IL App (4th) 230486, ¶ 96 (quoting *Cazacu*, 373 Ill. App. 3d at 473); see also *People v. Wilson*, 143 Ill. 2d 236, 245 (1991) ("Where a defendant elected to present evidence following the denial of his motion for a directed finding, any error in the trial court's ruling on the motion is waived unless the defendant renews the motion at the close of all the evidence."). Because defendant did not renew his motion for directed verdict at the close of all evidence, he has forfeited any issue with respect to propriety of the denial of his motion at the close of the State's case.

¶ 49            Furthermore, even if defendant had preserved this issue for review, his argument would fail. Defendant argues that while it was not improper to introduce the order itself into evidence, its contents—including its recitations about defendant having been served with a copy— should not have been introduced into evidence. This might be a plausible position with respect to the stamp on the document noting that defendant was "served in open court," as we do not know who made that "statement." However, the order itself is issued by the judge in the case. We can safely assume that the judge has first-hand knowledge of the events occurring in the courtroom. Even if the order is initially drafted by someone else, the judge's signature on it makes the order the judge's statement. We note that the standardized forms adopted by the Illinois Supreme Court call for the court's order to indicate, by a checked box, whether the respondent was given copies of the order "in [o]pen [c]ourt." Ill. Sup. Ct. Comm'n on Access to Justice, Order of Protection Form, (approved May 2025), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/eb3959df-89c3-453e-952a-8f0ae9f3bae2/OOP%20Plenary%20Order.pdf [https://perma.cc/8LA8-KSX7]. That is the same configuration seen on the February 2022 order of protection in this case.

¶ 50 We conclude that where such a box is checked on an order issued by the trial court, it constitutes the court's statement that defendant was served and such a statement necessarily falls within the hearsay exception for public records. Ill. R. Evid. 1005 (eff. Jan. 1, 2011). This evidence may not be conclusive on the question of service but, viewed in the light most favorable to the State, it was sufficient to permit a reasonable juror to conclude that defendant was present at the prior hearing and served with a copy of the order.

¶ 51 1. *Ineffective Assistance—Renewal of the Motion for Directed Verdict*

¶ 52 Alternatively, defendant argues that even if he forfeited the issue by failing to renew his motion for directed verdict at the close of all the evidence, his attorney was ineffective for failing to do so.

¶ 53 Every defendant has a constitutional right to effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by Illinois in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984).

¶ 54 "Under *Strickland*, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and the defendant was prejudiced by counsel's substandard performance." *People v. Hall*, 217 Ill. 2d 324, 335 (2005); *Strickland*, 466 U.S. at 687. Concerning prejudice, a defendant must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If the defendant fails to establish either prong, his ineffective assistance claim must fail. *Id.*; *People v. Torres*, 2024 IL 129289, ¶ 27. "Whether a defendant received ineffective assistance of counsel is a question of law that we review *de novo*." *People v.*

*Haynes*, 2024 IL 129795, ¶ 23.

¶ 55                                          2. *This Case*

¶ 56            On the facts of this case, we disagree with defendant and find there was no ineffective assistance under the first prong of *Strickland* because defendant cannot establish that counsel's conduct fell below an objective standard of reasonableness. As discussed above, the order signed by the judge was evidence on which the finder of fact could decide that defendant had been served with a copy of the order. Consequently, had defendant renewed his motion for directed verdict at the close of all evidence, it would have been denied. The law is well settled that the failure to file a futile motion is not ineffective assistance of counsel. *People v. Lewis*, 88 Ill. 2d 129, 156 (1981).

¶ 57            Additionally, we disagree with defendant's interpretation of what it means to "renew" the motion. Defendant essentially argues that renewing the motion at the close of all evidence requires the trial court to decide the motion by considering only the evidence in the State's case and ignore the evidence offered by defendant.

¶ 58            A motion for a directed verdict is a singular type of motion that exists pursuant to one statutory provision, though the motion can be brought at two different points in the case:

> "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." 725 ILCS 5/115-4(k) (West 2022).

When a motion for directed verdict is brought at the close of all of the evidence, established law requires the court to consider all of the evidence introduced, not just the evidence introduced by

the State. *People v. Turner*, 127 Ill. App. 3d 784, 790 (1984).

¶ 59     While the foregoing statute describes a single type of motion that can be brought at two distinct points in a case, defendant essentially argues that, when a motion for directed verdict is "renewed" at the close of all the evidence, it constitutes a completely different type of motion requiring the trial court to ignore the evidence offered by the defendant and consider only the evidence offered by the State. Defendant cites no specific authority in support of this contention, and we find authority suggesting that it is incorrect. The supreme court has made clear that "renewal" of the motion for directed verdict at the close of evidence requires consideration of all the evidence:

> "The mere fact that the trial court denied the motion for a directed verdict at the close of plaintiffs' case did not preclude the granting of the same motion at the close of all evidence. Any error in the ruling on the original motion was waived by defendant's proceeding with the introduction of evidence, [citation] and when defendant renewed his motion at the close of the case, the question was whether there was sufficient evidence *in the entire record* to permit the case to go to the jury." (Emphasis added.) *Lynn v. Lynn*, 21 Ill. 2d 131, 133 (1960).

¶ 60     Here, had defendant's trial counsel renewed the motion for directed verdict at the close of all evidence, the trial court would have had to consider *all* the evidence. That evidence included defendant's own testimony that he had received a copy of the order of protection and knew its contents. There was, then, no viable basis for defendant's counsel to have moved for a directed verdict at the close of all evidence, and it cannot constitute ineffective assistance for counsel to have declined to file a frivolous motion. *Lewis*, 88 Ill. 2d at 156.

¶ 61     B. Ineffective Assistance Regarding Instruction Tender

- 16 -

¶ 62       Defendant next argues that his trial counsel was ineffective for tendering two instructions—based on IPI Criminal 4th Nos. 11.77 and 11.78, respectively—that related to the charge of violation of an order of protection. According to the tendered instruction based on IPI Criminal 4th No. 11.77,

"[a] person commits the offense of a violation of an order of protection when, having been served notice of the contents of an order of protection, or otherwise have acquired actual knowledge of the contents of the order, he commits an act which was prohibited by a court in an order of protection."

¶ 63       Moreover, the relevant language of the fourth proposition of the instruction based on IPI Criminal 4th No. 11.78, states "[t]hat at the time the defendant physically present near and pointed and yelled at Carolyn Neff, he had been served notice of the contents of an order of protection or otherwise had acquired actual knowledge of the contents of the order."

¶ 64       Specifically, defendant argues that neither instruction accurately reflects the law, which requires the State to prove that, in addition to his knowledge of the restrictions imposed by the order of protection, defendant *knowingly committed* the acts alleged to have violated the order. Defendant notes that neither of the instructions use the word "knowingly" as required by the governing statute, section 12-3.4(a)(1)(i), which reads as follows:

"(a) A person commits violation of an order of protection if:

(1) He or she *knowingly commits an act* which was prohibited by a court or fails to commit an act which was ordered by a court in violation of:

(i) a remedy in a valid order of protection authorized under paragraphs (1), (2), (3), (14), or (14.5) of subsection (b) of Section 214 of the Illinois Domestic Violence Act of 1986 [(750 ILCS 60/214(b)(1), (2), (3), (14),

(14.5) (West 2022))]

* * *

and

(2) Such violation occurs after the offender has been served notice of the contents of the order, pursuant to the Illinois Domestic Violence Act of 1986 *** or otherwise has acquired actual knowledge of the contents of the order." (Emphasis added.) 720 ILCS 5/12-3.4(a)(1)(i) (West 2022).

¶ 65       1. *Use of Jury Instructions and Standard of Review*

¶ 66       Illinois law is well settled that

"[w]henever Illinois Pattern Jury Instructions, Criminal contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal instruction shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013).

¶ 67       2. *Ineffectiveness*

¶ 68       Proceeding to the first prong of *Strickland*, we now assess whether the current IPI Criminal 4th Nos. 11.77 and 11.78 accurately reflect the law as set forth in the governing statute, section 12-3.4(a)(1)(i), and whether counsel was ineffective for tendering them.

¶ 69       a. The IPI Instructions Do Not Accurately Reflect the Law

¶ 70       To prove the defendant guilty of violating an order of protection, the State was required to prove two discrete aspects of defendant's knowledge. First, it was necessary to show that defendant was aware of the restrictions imposed by a valid order of protection. 720 ILCS 5/12-3.4(a)(1)(i) (West 2022). Second, the State was required to show that defendant *knowingly*

committed an act prohibited by the order. *Id.* Section 12-3.4(a)(1)(i) clearly states that, "[a] person commits violation of an order of protection if: (1) He or she *knowingly commits an act* which was prohibited by a court." (Emphasis added.). *Id.*

¶ 71   IPI Criminal 4th No. 11.77 instructs juries on the offense of violation of an order of protection. The instruction adequately captures the first aspect of knowledge discussed above, as it specifies that it applies to a defendant who has "been served notice of the contents of an order of protection" or who has "otherwise [acquired] actual knowledge" of its contents. *Id.* With respect to the *conduct* that constitutes a violation of the terms of an order of protection, the instruction does not contain section 12-3.4(a)(1)(i)'s mental state component; it simply says that a violation exists where a defendant "commits an act which was prohibited by a court in an order of protection." *Id.*; *contra* 720 ILCS 5/12-3.4(a)(1)(i) (West 2022).

¶ 72   The issues instruction set forth in IPI Criminal 4th No. 11.78 contains the same defect. Once again, the instruction properly captures the first aspect of a defendant's knowledge, as it specifies that the State must show that, at the time of the offense, the defendant "had been served notice of the contents of an order of protection or otherwise had actual knowledge of [its] contents." *Id.* However, the instruction again fails to specify that the defendant must *knowingly* violate the terms of the order. *Id.*; *contra* 720 ILCS 5/12-3.4(a)(1)(i) (West 2022).

¶ 73   Consequently, while section 12-3.4(a)(1)(i) has two distinct knowledge components (knowledge of the order and knowingly acting in violation of it), the IPI instructions instruct on only one. A defendant acts knowingly when he is consciously aware that his conduct is practically certain to cause the result. *People v. Hall*, 273 Ill. App. 3d 838, 842 (1995); 720 ILCS 5/4-5(a) (West 2022). Accordingly, the current IPI Criminal 4th Nos. 11.77 and 11.78 inaccurately state the law because they did not include the term "knowingly." It is essential to understand the

- 19 -

significance of the omission of an instruction on knowledge in this context. Section 12-3.4(a)(1)(i) does not purport to be a strict liability statute. 720 ILCS 5/12-3.4(a)(1)(i) (West 2022). In other words, a defendant does not violate an order of protection simply by a chance encounter with the protected party at a place where he or she is not expected to be. The jury must be instructed that a defendant violated the order protection *knowing* that he or she was doing so.

¶ 74     The State relies on *People v. Hoffman*, 2012 IL App (2d) 110462, ¶¶ 15-16, which held that IPI Criminal 4th Nos. 11.77 and 11.78 accurately state the law applicable to a violation of an order of protection. However, the 2009 version of the law interpreted in *Hoffman* changed in 2011. See Pub. Act 96-1551 (eff. July 1, 2011). Under the version of the statute in effect when *Hoffman* was decided, the State need only prove that "[the] defendant (1) committed an act prohibited by an order of protection, or failed to commit an act ordered by an order of protection, and (2) he had been served notice of or otherwise acquired actual knowledge of the contents of the order." (Emphasis and internal quotation marks omitted.) *Hoffman*, 2012 IL App (2d) 110462, ¶ 13; see 720 ILCS 5/12-30(a) (West 2008). Section 12-30(a), which *Hoffman* interpreted, provided that "[a] person commits violation of an order of protection if: (1) He or she commits an act which was prohibited by a court or fails to commit an act which was ordered by a court" in violation of an order of protection. 720 ILCS 5/12-30(a)(1)(ii) (West 2008). In 2011, section 12-30 was replaced by section 12-3.4, which now requires the defendant to have "knowingly" performed the alleged act in violation of the order of protection in order to be guilty of the offense. See 720 ILCS 5/12-3.4 (West 2024); Pub. Act 96-1551 (eff. July 1, 2011).

¶ 75     *Hoffman* appears to have lost its precedential value on the point in question, due to the statutory addition of an explicit knowledge requirement. In *People v. Gupta*, 2024 IL App (3d) 220349-U, an Illinois Supreme Court Rule 23 (eff. Feb. 1, 2023) order, released on December 31,

- 20 -

2024, the court stated, "The *Hoffman* decision predates the 2019 amendment to section [12-3.4(a)] requiring an offender to have 'knowingly' performed the alleged act in violation of the order of protection, to be convicted of the offense." *Gupta*, 2024 IL App (3d) 220349-U, ¶ 53. We find *Gupta*'s conclusions persuasive and agree with defendant that the instructions here were inaccurate.

¶ 76    IPI Criminal 4th Nos. 11.77 and 11.78 instructions have not been amended to comport with the subsequent changes section 12-3.4(a)(1)(i), so they do not accurately convey the present law regarding the charge of violation of an order of protection. We urge the Illinois Supreme Court Committee on Pattern Jury Instructions in Criminal Cases to consider updating IPI Criminal 4th Nos. 11.77 and 11.78 to reflect the current requirements of the applicable statute.

¶ 77    b. Tendering the Incorrect Instructions Was Objectively Unreasonable

¶ 78    Having determined that the instructions do not accurately reflect Illinois law, we now examine whether defense counsel's conduct fell below objective standards by tendering an instruction lacking both aspects of the knowledge requirement. It appears that the continuing validity of *Hoffman*'s interpretation of IPI Criminal 4th Nos. 11.77 and 11.78 was first questioned in June 2024 in *People v. Barwicki*, 2024 IL App (2d) 230285-U, prior to the trial below. In *Barwicki*, 2024 IL App (2d) 230825-U, ¶ 13, the defendant claimed ineffective assistance of counsel for his trial attorney's failure to object to IPI Criminal 4th Nos. 11.77 and 11.78. Defendant argued that the instructions did not accurately reflect the law because neither incorporated the entire *scienter* component of section 12-3.4(a). *Barwicki*, 2024 IL App (2d) 230825-U, ¶ 22. The appellate court found that the instructions incorrectly stated the law and concluded that "trial counsel was ineffective for failing to object to the instructions." *Id.* ¶ 23. However, the court found no ineffective assistance because defendant could not prove he was prejudiced, as "the evidence

against him was overwhelming." *Id.*

¶ 79 Even though *Barwicki* is an unpublished order, it—along with the statute itself—should have put counsel on notice that the two instructions at issue did not accurately reflect current law. Although "[i]t is not ineffective assistance to fail to anticipate developments in the law" (*People v. Martinez*, 2025 IL App (4th) 241198-U, ¶ 37), a plain reading of IPI Criminal 4th Nos. 11.77 and 11.78 shows they do not contain the requisite *scienter* requirement found in section 12.3.4(a)(1)(i). Given the state of the law at the time of trial, and mindful of Rule 451(a), we conclude that trial counsel's tender of the two instructions was objectively unreasonable.

¶ 80                                     c. Prejudice

¶ 81 Because a defendant must satisfy both prongs of *Strickland*, we must now address the issue of prejudice. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 48 ("Failure to satisfy either prong precludes a finding of ineffective assistance of counsel."). To establish prejudice, a defendant must show a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Henderson*, 2013 IL 114040, ¶ 15. A "reasonable probability" is defined as a probability which undermines confidence in the outcome of the trial. *Bates*, 2018 IL App (4th) 160255, ¶ 48.

¶ 82 Here, we conclude that defendant was not prejudiced by the erroneous instruction. We examine separately the two ways in which the instructions described defendant's wrongful acts: (1) that defendant was physically present near Neff and (2) that he pointed and yelled at her.

¶ 83 With respect to defendant's presence near Neff, we conclude that the evidence overwhelmingly shows that defendant *was* aware of her presence. We draw this conclusion primarily on the basis of defendant's own testimony. He acknowledged that he knew the house belonged to Neff's parents; that he saw Neff's vehicle parked in front of the house; and most

importantly, that he could see Neff in the window "facing forward." At this point, the evidence points to only one conclusion: that defendant was fully aware that Neff was at her parents' house that Thanksgiving Day and that defendant chose to remain present and extend his encounter. In this respect, we find that the evidence is so clear that the absence of a specific instruction on defendant knowingly violating the order caused him no prejudice.

¶ 84 With respect to the question of whether defendant "pointed and yelled" at Neff or toward their son as defendant claimed, the evidence is conflicting. However, the actions themselves—pointing and yelling—carry with them an implicit degree of intentionality. In other words, there was no issue in the case that defendant *accidentally* gestured or yelled toward Neff, only whether the subject of his action was instead their son.

¶ 85 Additionally, in assessing any prejudice defendant may have suffered from the lack of an explicit knowledge requirement in the jury instructions, it is useful to consider how the matter was argued to the jury. See *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 98 (examining the arguments of counsel in assessing whether defendant suffered prejudice from his attorney's failure to tender a proper jury instruction). During closing argument, the State made it clear that the critical question the jury must decide was who defendant was pointing at, which is inherently a matter of his intention:

"We know that [defendant] went to that—past that residence; we know he saw Carolyn Neff's car before he got to where the big picture window is; we know that he continued on in that fashion; we know that he turned the corner and passed the house; we know he looked in the window and he saw Carolyn Neff; we know that he pointed. *The question is: Who was he pointing at? We also know that he made some sort of gesture with his mouth, whether he was yelling or what he said is a*

*question for you to decide and who that was directed at.* But what we know for a fact is he knew that her car was there, that she would likely be present at the residence, he observed her, and he continued on passed continuing to make contact with [D.G.]." (Emphasis added.)

¶ 86    Defendant reinforced the State's position during its closing argument as well, arguing that "the ultimate question [is] whether my client pointed and yelled at Carolyn Neff."

¶ 87    There is no question that the jury would have understood that in order to conclude that defendant's pointing and yelling violated the order of protection, they needed to find he pointed and yelled *at Neff*. We conclude that the resolution of that question effectively requires the jury to resolve the *scienter* requirement of section 12-3.4(a)(1)(i). 720 ILCS 5/12-3.4(a)(1)(i) (West 2022).

¶ 88    Consequently, we find that defendant has not demonstrated prejudice from his attorney's error in tendering jury instructions that did not explicitly state the knowledge requirement with respect to his conduct. We therefore find no ineffective assistance of counsel.

¶ 89                                III. CONCLUSION

¶ 90    For the reasons stated, we affirm the trial court's judgment.

¶ 91    Affirmed.

*People v. Gittings*, 2025 IL App (4th) 241445

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Hancock County, No. 23-CF-93; the Hon. Rodney G. Clark, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Sarah Free, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Bobi James, State's Attorney, of Carthage (Patrick Delfino, David J. Robinson, and Timothy J. Londrigan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |